UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GETRONICSWANG CO., LLC,<br><br>    Plaintiff,<br><br>v.<br><br>HYNIX SEMICONDUCTOR, INC. and<br>SAMSUNG ELECTRONICS CO., LTD.<br><br>    Defendants. | Civil Action No. 04-12382 (RCL) |

**MOTION OF DEFENDANTS HYNIX SEMICONDUCTOR, INC. AND
SAMSUNG ELECTRONICS CO., LTD. FOR A PROTECTIVE ORDER**

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Defendants Hynix Semiconductor, Inc. ("Hynix") and Samsung Electronics Co., Ltd. ("Samsung") (collectively "Defendants") hereby move for a protective order with regard to depositions of the Defendants pursuant to Fed. R. Civ. P. 30(b)(6) that have been noticed to take place in Boston, Massachusetts on November 9, 2005. In support of their motion, Defendants state as follows.

**PROCEDURAL BACKGROUND**

Samsung and Hynix are Korean corporations with their principal places of business in Seoul, Korea. Plaintiff Getronicswang Co., LLC ("Wang") is a Delaware limited liability company with its principal place of business in Billerica, Massachusetts. Wang filed its complaint in this matter on November 10, 2004 asserting claims for breach of contract arising out of licensing agreements (the "Agreements") entered into by Wang in 1992 with Samsung, in 1993 with Hyundai Electronics Industries Co., Ltd., Hynix' predecessor in interest, and in 1992 with Goldstar Electron Co. Ltd. ("Goldstar"), which Hynix acquired in 1999. The complaint

alleges that beginning in 1992, the Defendants improperly withheld portions of royalty payments made pursuant to the Agreements and paid those amounts as taxes to the Korean government. The complaint further alleges that Wang in 1996 initiated a Competent Authority Proceeding which resulted in an agreement by the Korean government in 2002 to repay the taxes that had been withheld to the Defendants in their capacity as withholding agents for Wang.  According to Wang, although Defendants paid Wang the entire amount they received back from the Korean government, they did not pay the entire amount Wang was owed, because the Korean won had deteriorated against the United States dollar between the time the taxes were paid and the time they were refunded.  Wang seeks to recover through this action what it claims to be the full amount of the royalty payments due, plus interest and attorneys' fees.

The Court held a scheduling conference on June 8, 2005, at which it set a discovery deadline of November 15, 2005.  The parties have served and responded to document requests and interrogatories and Wang has propounded requests for admissions to Defendants.  The only deposition that occurred in the case was a deposition by the Defendants of Anthony Paolillo, an employee in the Wang tax department, who appeared both in his individual capacity and as Wang's 30(b)(6) designee.  Defendants noticed, but were unable to take, the deposition of Michael H. Shanahan, a former member of the Wang legal department, who is unable to testify for medical reasons.  Defendants have noticed an additional deposition for November 10, 2004 of James Boudreau, a former member of the Wang tax department.

On October 20, 2005, with the discovery deadline <u>less than a month</u> away, Wang for the first time indicated its desire and intention to take depositions of the Defendants.  On October 24, 2005, Wang noticed 30(b)(6) depositions of Samsung and Hynix for November 9, 2005.  Wang noticed the Samsung deposition for 10:00 a.m. and the Hynix deposition for 2:00 p.m.  Wang

noticed the depositions for the Boston office of Wang's counsel. On October 26, 2005, Robert P. Sherman, counsel for the Defendants, wrote to Michael C. Harvell, counsel for Wang, and stated on a preliminary basis, subject to consulting with the Defendants, his objection to having the depositions taken in Boston. Mr. Harvell responded by proposing that the depositions be taken by videoconference, with the representatives of the Defendants in Seoul answering questions propounded by him in Boston. Because such an arrangement would still require Mr. Sherman to go to Korea to prepare the witnesses and to defend the depositions, it would not significantly reduce the burden of the depositions on the Defendants.

After considering all of the factors implicated by the Wang 30(b)(6) notices, Defendants now request that the Court enter an order that would prohibit the taking of the depositions altogether. Balancing the amount of substantive admissible evidence that the depositions are likely to yield against the expense and inconvenience that would be involved in taking them, it is clear that the undoubted burden to Defendants greatly outweighs any potential benefit to Wang and the depositions should not go forward.

## ARGUMENT

The deposition notices served by Wang on Samsung and Hynix indicate that Wang intends to inquire about tax withholding that occurred more than ten years ago. Wang attached a single paragraph schedule of topics to the deposition notices. Those notices were identical except for the company names and stated, in their entirety, as follows:

> Any and all facts concerning [Samsung or Hynix or Goldstar's] withholding of taxes from the royalty payments at issue in this case, including any oral or written communications between any representative of [Samsung or Hynix or Goldstar] and any Korean taxing authorities, any representative of Wang, or internal communications within [Samsung or Hynix or Goldstar].

Attached to this motion are Affidavits of D. S. Chung on behalf of Hynix and Sungrak Son on behalf of Samsung. Those affidavits demonstrate that, because of the time that has passed since the events specified in the schedules to the deposition notices took place, and, at least with regard to Hynix, because there were no issues concerning withholding at the time the withholding occurred, there is no one at either Hynix or Samsung who can testify from first hand knowledge regarding them. It is not simply that there is no one with first hand knowledge regarding <u>all</u> of the issues surrounding the withholding, but rather that there is no one who can testify concerning <u>any</u> of them. Moreover, there is no pool of employees possessing first hand knowledge with whom a designated witness could consult in order to fill in the gaps in his own knowledge.

As Mr. Chung states in his Affidavit, he is one of the longest-tenured members of the Patent Group at Hynix and was a Senior Manager of the Patent Department throughout the time the withholding took place, but he has no knowledge of any issues surrounding the withholding and does not believe that any such issues existed. Mr. Chung does not recall that there were any discussions within Hynix or between Hynix and Wang with regard to the withholding of taxes. According to Mr. Chung, Hynix simply withheld taxes as a matter of course in accordance with the Korean tax laws and regulations. With regard to Goldstar, which was acquired by Hynix in 1999, Mr. Chung does not have personal knowledge of who was responsible for negotiating the Agreement or withholding the taxes or who was involved in corresponding with Wang concerning such negotiations and withholding. As for Samsung, Mr. Son's affidavit states that after making diligent inquiries at Samsung, he has not been able to identify anyone employed by the company who has any personal knowledge or awareness concerning the withholding or even any recollection of discussing the withholding with anyone who was involved in it. Finally, to

the extent that Wang wishes to depose persons knowledgeable with regard to written communications between the Defendants and the Korean taxing authorities, written communications with Wang or internal written communications, there is no one at either company who can explain the meaning of such communications beyond what appears on the face of the communications themselves, all of which, to the extent they still exist, the Defendants have produced to Wang.

In short, the Defendants have no one in their employ who either possesses or has access to the kind of institutional knowledge that a 30(b)(6) deposition is designed to elicit. Under such circumstances, a 30(b)(6) deposition is highly unlikely to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(c), entitled "Protective Orders", provides that

> Upon motion by a party or by the person from whom discovery is sought, . . . and for good cause shown, the court in which the action is pending or, alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(1)    that the disclosure or discovery not be had; . . .

The Supreme Court has stated with regard to Rule 26(c) that, "[w]ith this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process." Herbert v. Lando, 441 U. S. 153, (1979). "In considering whether good cause exists for a protective order, the federal courts have generally adopted a balancing process . . . [T]he court . . . must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled." Pansy v. Borough of Stroudsburg, 23 F. 3d 772, 787 (3rd Cir. 1994)(internal citations omitted).

Rule 26(c) "provides a means of preventing a deposition when such would impose an 'undue burden' on the deponent." Cruz v. Aramark Services, Inc., 2004 U.S. Dist. LEXIS 6309, *2 (W. D. Texas March 31, 2004). Whether or not to grant such an order is a matter committed to the Court's discretion. Nocal, Inc. v. Sabercat Ventures, Inc., 2004 U.S. Dist. LEXIS 26974, *11 (N.D. Cal. November 15, 2004). In Gazaway v. Makita USA, Inc., 1998 U.S. Dist. LEXIS 6355 (D. Kansas 1998), a wrongful termination action, the American plaintiff sought to depose the president of his former employer, who was a resident of Japan. The proposed deponent submitted an affidavit in which he stated that, although he had had overall responsibility for the reduction in force program pursuant to which the plaintiff was terminated, he had no personal knowledge concerning the plaintiff or why he was selected for termination. The Court stated that

> Defendant has adequately demonstrated that it would be unduly burdensome and expensive to produce Kenji Karube for deposition in Kansas City, Missouri. It would require round-trip transportation between Japan and Kansas City. Plaintiff has shown no crucial need for the deposition. He already has testimony from the managers that the layoff was the result of a general policy decision by Karube to reduce the work force. The affidavit demonstrates a lack of personal knowledge, however, as to what criterion was used to implement the reduction. It also shows a lack of personal knowledge by Karube about plaintiff and his work performance. The court can reasonably infer from the affidavit that the proposed deposition would disrupt the work of the deponent, with little if anything of consequence to be gained from it. The deposition as scheduled would also violate the principle . . . that depositions of a corporate defendant or its officers should generally be taken at its principal place of business.

Id., at *8.

Similarly, in Cotracom Commodity Trading Co. v. Seaboard Corp., 2000 U.S. Dist. LEXIS 19914 (D. Kansas June 14, 2000), defendants sought to depose three foreign witnesses,

two of whom professed to have no personal knowledge of the specifics of the case. The court noted that

> Although parties generally have the right to choose the method and order of discovery, the Court may impose necessary restrictions to facilitate the just, speedy, and inexpensive determination of the action. At this late date, it appears unreasonable to permit international depositions of individuals who profess no knowledge of the limited matters subject to discovery. Defendants can obtain sufficient discovery through written interrogatories or requests for admission. The Court recognizes the general rule that "a party seeking discovery may test an asserted lack of knowledge." . . . The rule, however, is not absolute. The circumstances here justify precluding the depositions of the two members of the Board of Directors of Bendel.

Id., at *10 (internal citations omitted)

The issues in dispute in this case are almost entirely matters of contract interpretation. The discovery taken to date has demonstrated that there are few, if any, factual disputes between the parties. Even if such disputes did exist, the depositions that Wang has proposed could not contribute to their resolution, because there is no one at the Defendants who can provide any information beyond what can be gleaned from the Agreements and the communications surrounding them. Weighing that against the expense and business disruption that would be involved in flying deponents from Seoul for the very brief depositions that Wang envisions, it is clear that the balance tips decisively against allowing the depositions that Wang has noticed to go forward.

## CONCLUSION

For the foregoing reasons, Hynix and Samsung's Motion for a Protective Order should be allowed.

## REQUEST FOR HEARING

Defendants hereby request that the Court hold a hearing on their Motion for Protective Order.

HYNIX SEMICONDUCTOR, INC. and
SAMSUNG ELECTRONICS CO., LTD.,

By its attorneys,

/s/ *Robert P. Sherman*
Robert P. Sherman (BBO #458540)
Gordon M. Jones, III (BBO #549016)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
(617) 345-1000

Dated: November 2, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on November 2, 2005.

/s/ *Gordon M. Jones, III*
Gordon M. Jones, III