UNITED STATES - REPUBLIC OF KOREA INCOME TAX CONVENTION

*Convention Signed at Seoul June 4, 1976;*
*Ratification Advised by the Senate of the United States of America July 9, 1979;*
*Ratified by the President of the United States of America July 25, 1979;*
*Ratified by the Republic of Korea December 16, 1976;*
*Ratifications Exchanged at Washington September 20, 1979;*
*Proclaimed by the President of the United States of America October 23, 1979;*
*Entered into Force October 20, 1979.*

GENERAL EFFECTIVE DATE UNDER ARTICLE 31: 1 JANUARY 1980

TABLE OF ARTICLES

Article 1--------------------------------Taxes Covered
Article 2--------------------------------General Definitions
Article 3--------------------------------Fiscal Domicile
Article 4--------------------------------General Rules of Taxation
Article 5--------------------------------Relief from Double Taxation
Article 6--------------------------------Source of Income
Article 7--------------------------------Nondiscrimination
Article 8--------------------------------Business Profits
Article 9--------------------------------Permanent Establishment
Article 10-------------------------------Shipping and Air Transport
Article 11-------------------------------Related Persons
Article 12 ------------------------------Dividends
Article 13-------------------------------Interest
Article 14-------------------------------Royalties
Article 15-------------------------------Income from Real Property
Article 16-------------------------------Capital Gains
Article 17-------------------------------Investment or Holding Companies
Article 18-------------------------------Independent Personal Services
Article 19-------------------------------Dependent Personal Services
Article 20-------------------------------Teachers
Article 21-------------------------------Students and Trainees
Article 22-------------------------------Governmental Functions
Article 23-------------------------------Private Pensions and Annuities
Article 24-------------------------------Social Security Payments
Article 25-------------------------------Exemption from Social Security Taxes
Article 26-------------------------------Diplomatic and Consular Officers
Article 27-------------------------------Mutual Agreement Procedure
Article 28-------------------------------Exchange of Information

Article 29--------------------------------Extension to Territories
Article 30--------------------------------Assistance in Collection
Article 31--------------------------------Entry into Force
Article 32--------------------------------Termination
Notes of Exchange---------------------of June 4, 1976
Letter of Submittal----------------------of 14 August, 1976
Letter of Transmittal-------------------of 3 September, 1976
The "Saving Clause"-------------------Paragraph 4 of Article 4

TAX CONVENTION WITH THE REPUBLIC OF KOREA

MESSAGE

FROM

THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

THE CONVENTION BETWEEN THE UNITED STATES OF AMERICA AND THE REPUBLIC OF KOREA FOR THE AVOIDANCE OF DOUBLE TAXATION AND THE PREVENTION OF FISCAL EVASION WITH RESPECT TO TAXES ON INCOME AND THE ENCOURAGEMENT OF INTERNATIONAL TRADE AND INVESTMENT, SIGNED AT SEOUL JUNE 4, 1976, TOGETHER WITH A RELATED EXCHANGE OF NOTES

LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, August 14, 1976.*

The PRESIDENT,
The White House.

THE PRESIDENT: I have the honor to submit to you, with a view to its transmission to the Senate for advice and consent to ratification, the Convention between the United States and the Republic of Korea for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and the Encouragement of International Trade and Investment signed at Seoul June 4, 1976, together with a related exchange of notes.

The Convention with Korea is similar, in all essential respects, to other tax conventions entered into by the United States in recent years, such as the convention with Iceland which entered into force last

year.

The Convention establishes maximum rates of withholding tax in the source country on income payments flowing between the two countries. The rate of withholding tax on portfolio dividends is limited to 15 percent, while on dividends paid by a subsidiary to a parent corporation the rate of tax may not exceed 10 percent. The maximum rate of withholding tax on interest is 12 percent except that interest derived by the Government of one of the Contracting States or by its local authorities or instrumentalities is exempt from withholding at the source. Royalties are subject in general to a 15 percent maximum rate of tax. However, the tax on literary and artistic royalties, including motion picture royalties, is limited to 10 percent.

The provisions of the Convention dealing with the taxation of business and personal service income are essentially the same as in our other recent conventions as are those dealing with definitional and administrative matters. For example, a resident of one country will not be subject to tax in the other country on business profits unless those profits are attributable to a permanent establishment which the resident maintains in the other country. Similarly, for business visitors from one country temporarily present in the other, the host country may tax his income only if certain tests in terms of time spent or amounts earned are met.

One unusual provision of the Convention is found in Article 25, which provides a special exemption from United States social security taxes for Korean residents who are temporarily present in Guam. A similar exemption is provided in the Internal Revenue Code for Philippine residents temporarily present in Guam. The Koreans argued that the Philippine exemption provides an unfair advantage to Philippine residents and the firms which hire them and asked that a similar exemption be written into the Convention for Korean residents. The Convention provides that Korean residents will be exempt from social security taxes only so long as the statutory exemption is in effect for Philippine residents. This provision has the approval of the Department of Health, Education and Welfare.

The Convention and exchange of notes will enter into force on the thirtieth day following the exchange of instruments of ratification. It shall have effect with respect to withholding taxes and with respect to the special exemption from social security taxes to amounts paid on or after the first day of the second month following the date on which the Convention enters into force. With respect to other taxes it shall have effect for taxable years beginning on or after January 1 of the year following the date on which the Convention enters into force. Once in force, the Convention will remain in effect for a minimum of five years and indefinitely thereafter subject to the right of either party to terminate it by giving six-months' notice for that purpose pursuant to the provisions of the Convention.

The exchange of notes is similar in effect to those exchanged in connection with our convention with Trinidad and Tobago in which the United States agrees, when feasible, to resume discussions with Korea with a view toward reaching agreement on a supplementary protocol providing a tax impetus to flows of United States capital and technology to Korea.

A technical memorandum explaining in detail the provisions and effect of the Convention is being

prepared by the Department of the Treasury and will be submitted to the Senate Foreign Relations Committee for consideration in connection with the Convention.

The Department of the Treasury, with the cooperation of the Department of State, was primarily responsible for the negotiation of this Convention. It has the approval of both Departments.

Respectfully submitted,

CHARLES W. ROBINSON.

Enclosure: Convention and exchange of notes.

LETTER OF TRANSMITTAL

THE WHITE HOUSE, *September 3, 1976.*

*To the Senate of the United States:*

I transmit herewith, for Senate advice and consent to ratification, the Convention signed at Seoul on June 4, 1976, between the Government of the United States of America and the Government of the Republic of Korea for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and the Encouragement of International Trade and Investment, together with a related exchange of notes.

There is no convention on this subject presently in force between the United States and Korea.

The Convention follows generally the form and content of most conventions of this type recently concluded by the United States. Its primary purpose is to identify clearly the tax interests of the two countries to avoid double taxation and to help prevent the illegal evasion of taxation.

For the information of the Senate, I also transmit a covering report of the Department of State with respect to the Convention.

This Convention would promote closer economic cooperation and more active trade between the United States and Korea.

I urge the Senate to act favorably at an early date on this Convention and its related exchange of notes and to give its advice and consent to ratification.

GERALD R. FORD.

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

CONSIDERING THAT:

The Convention between the United States of America and the Republic of Korea for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and the Encouragement of International Trade and Investment was signed at Seoul on June 4, 1976, together with a related exchange of notes, the texts of which are hereto annexed;

The Senate of the United States of America by its resolution of July 9, 1979, two-thirds of the Senators present concurring therein, gave its advice and consent to ratification of the Convention and related exchange of notes

The Convention and related exchange of notes were ratified by the President of the United States of America on July 25, 1979, in pursuance of the advice and consent of the Senate, and was ratified on the part of the Republic of Korea on December 16,1976;

It is provided in Article 31 of the Convention that the Convention shall enter into force on the thirtieth day following the exchange of instruments of ratification and shall have effect as specified in Article 31;

The instruments of ratification of the Convention were exchanged at Washington on September 20, 1979, and accordingly the Convention, with related exchange of notes, entered into force on October 20, 1979, with effectiveness as specified in Article 31;

NOW, THEREFORE, I, Jimmy Carter, President of the United States of America, proclaim and make public the Convention, with related exchange of notes, to the end that they be observed and fulfilled' with good faith on and after October 20, 1979, by the United States of America and by the citizens of the United States of America and all other persons subject to the jurisdiction thereof.

IN TESTIMONY WHEREOF, I have signed this proclamation and caused the Seal of the United States of America to be affixed.

DONE at the city of Washington this twenty-third day of October in the year of our Lord one thousand nine hundred seventy-nine and of the Independence of the United States of America the two hundred fourth.

By the President:

                                                                              JIMMY CARTER

WARREN CHRISTOPHER,
   *Acting Secretary of State*

CONVENTION BETWEEN THE UNITED STATES OF AMERICA AND THE
REPUBLIC OF KOREA FOR THE AVOIDANCE OF DOUBLE TAXATION
AND THE PREVENTION OF FISCAL EVASION WITH RESPECT TO
TAXES ON INCOME AND THE ENCOURAGEMENT OF INTERNATIONAL
TRADE AND INVESTMENT.

The Government of the United States of America and the Government of the Republic of Korea, desiring to conclude a convention for the avoidance of double taxation of income and the prevention of fiscal evasion and the encouragement of international trade and investment have appointed for that purpose as their respective Plenipotentiaries:

The Government of the United States of America:
His Excellency Richard L. Sneider, Ambassador Extraordinary and Plenipotentiary of the United States of America to the Republic of Korea;

The Government of the Republic of Korea:
His Excellency Park Tong-jin, Minister of Foreign Affairs of the Republic of Korea;

Who, having communicated to each other their full powers, found in good and due form, have agreed upon the following Articles.

ARTICLE 1
Taxes Covered

(1) The taxes which are the subject of this Convention are:
    (a) In the case of the United States, the Federal income taxes imposed by the Internal Revenue Code (the United States tax), and
    (b) In the case of Korea, the income tax and the corporation tax (the Korean tax).

(2) This Convention shall also apply to taxes substantially similar to those covered by paragraph (1) which are imposed in addition to, or in place of, existing taxes after the date of signature of this Convention.

(3) For the purpose of Article 7 (Nondiscrimination), this Convention shall also apply to taxes of every kind imposed at the National, state, or local level. For the purpose of Article 28 (Exchange of Information) this Convention shall also apply to taxes of every kind imposed at the National level.

ARTICLE 2
General Definitions

(1) In this Convention, unless the context otherwise requires:
    (a)    (i) The term "United States" means the United States of America; and
          (ii) When used in a geographical sense, the term "United States" means the states thereof and the District of Columbia. Such term also includes:
              (A) The territorial sea thereof, and
              (B) The seabed and subsoil of the submarine areas adjacent to the coast thereof, but beyond the territorial sea, over which the United States exercises sovereign rights, in accordance with international law, for the purpose of exploration and exploitation of the natural resources of such areas, but only to the extent that the person, property, or activity to which this Convention is being applied is connected with such exploration or exploitation.
    (b)    (i) The term "Korea" means the Republic of Korea; and
          (ii) When used in a geographical sense, the term "Korea" means all the territory in which the laws relating to Korean tax are in force. The term also includes:
              (A) The territorial sea thereof, and
              (B) The seabed and subsoil of the submarine areas adjacent to the coast thereof, but beyond the territorial sea, over which Korea exercises sovereign rights, in accordance with international law, for the purpose of exploration and exploitation of the natural resources of such areas, but only to the extent that the person, property, or activity to which this Convention is being applied is connected with such exploration or exploitation.
    (c) The term "Contracting State" means the United States or Korea, as the context requires.
    (d) The term "person" includes an individual, a partnership, a corporation, an estate, a trust, or any body of persons.
    (e)    (i) The term "United States corporation" or "corporation of the United States" means a corporation which is created or organized under the laws of the United States or any state thereof or the District of Columbia, or any unincorporated entity treated as a United States corporation for United States tax purposes; and
          (ii) The term "Korean corporation" or "corporation of Korea" means a corporation (other than a United States corporation) which has its head or main office in Korea, or any entity treated as a Korean corporation for Korean tax purposes.
    (f) The term "competent authority" means:
        (i) In the case of the United States, the Secretary of the Treasury or his delegate, and
        (ii) In the case of Korea, the Minister of Finance or his delegate.
    (g) The term "State" means any National State, whether or not one of the Contracting States.
    (h) The term "citizen" means:
        (i) In the case of the United States, a citizen of the United States, and
        (ii) In the case of Korea, a national of Korea.

(7) There shall be allowed for purposes of United States tax, in the case of a resident of Korea who is not a resident of the United States (other than an officer or employee of the Government of Korea or local authority thereof), as long as the United States Internal Revenue Code provides only one personal exemption, a deduction for personal exemptions, subject to the conditions prescribed in sections 151 through 154 of the Internal Revenue Code as in effect on the date of the signature of this Convention, for the spouse of the taxpayer and for each child of the taxpayer present in the United States and residing with him in the United States at anytime during the taxable year, but such additional deduction shall not exceed that proportion thereof which the taxpayer's gross income from sources within the United States which is treated as effectively connected with the conduct of a trade or business within the United States within the meaning of section 864 (c) of the Internal Revenue Code for the taxpayer's taxable year bears to his entire income from all sources for such taxable year.

(8) The United States may impose its personal holding company tax and its accumulated earnings tax notwithstanding any provision of this Convention. However, a Korean corporation shall be exempt from the United States personal holding company tax in any taxable year if all of its stock is owned, directly or indirectly, by one or more individuals who are residents of Korea (and not citizens of the United States) for that entire year. A Korean corporation shall be exempt from the United States accumulated earnings tax in any taxable year unless such corporation is engaged in trade or business in the United States through a permanent establishment at any time during such year.

## ARTICLE 5
### Relief from Double Taxation

Double taxation of income shall be avoided in the following manner:

(1) In accordance with the provisions and subject to the limitations of the law of the United States (as it may be amended from time to time without changing the principles hereof), the United States shall allow to a citizen or resident of the United States as a credit against the United States tax the appropriate amount of Korean tax and, in the case of a United States corporation owning at least 10 percent of the voting power of a Korean corporation from which it receives dividends in any taxable year, shall allow credit for the appropriate amount of taxes paid to Korea by the Korean corporation paying such dividends with respect to the profits out of which such dividends are paid. Such appropriate amount shall be based upon the amount of tax paid to Korea but the credit shall not exceed the limitations (for the purpose of limiting the credit to the United States tax on income from sources within Korea or on income from sources outside the United States) provided by United States law for the taxable year. For the purpose of applying the United States credit in relation to taxes paid to Korea, the rules set forth in Article 6 (Sources of Income) shall be applied to determine the source of income.

(2) In accordance with the provisions and subject to the limitations of the law of Korea (as it may be amended from time to time without changing the principles hereof), Korea shall allow to a citizen or resident of Korea as a credit against Korean tax the appropriate amount of income taxes paid to the United States and, in the case of a Korean corporation owning at least 10 percent of the voting power of a United States corporation from which it receives dividends in any taxable year, shall allow credit for

the appropriate amount of taxes paid to the United States by the United States corporation paying such dividends with respect to the profits out of which such dividends are paid. Such appropriate amount shall be based upon the amount of tax paid to the United States but shall not exceed that portion of Korean tax which such citizen's or resident's net income from sources within the United States bears to his entire net income for the same taxable year. For the purpose of applying the Korean credit in relation to taxes paid to the United States, the rules set forth in Article 6 (Source of Income) shall be applied to determine the source of income.

## ARTICLE 6
### Source of Income

For the purposes of this Convention:

(1) Dividends shall be treated as income from sources within a Contracting State only if paid by a corporation of that Contracting State.

(2) Interest shall be treated as income from sources within one of the Contracting States only if paid by that Contracting State, a political subdivision or a local authority thereof, or by a resident of that Contracting State. Notwithstanding the preceding sentence--

    (a) If the person paying the interest (whether or not he is a resident of one of the Contracting States) has a permanent establishment in one of the Contracting States in connection with which the indebtedness on which the interest is paid was incurred and such interest is borne by such permanent establishment, or

    (b) If the person paying the interest is a resident of one of the Contracting States and has a permanent establishment in a State other than a Contracting State in connection with which the indebtedness on which the interest is paid was incurred and such interest is paid to a resident of the other Contracting State, and such interest is borne by such permanent establishment, such interest shall be deemed to be from sources within the State in which the permanent establishment is situated.

(3) Royalties described in paragraph (4) of Article 14 (Royalties) for the use of, or the right to use, property (other than as provided in paragraph (5) with respect to ships or aircraft) described in such paragraph shall be treated as income from sources within one of the Contracting States only if paid for the use of, or the right to use, such property within that Contracting State.

(4) Income from real property and royalties from the operation of mines, quarries, or other natural resources (including gains derived from the sale of such property or the right giving rise to such royalties) shall be treated as income from sources within one of the Contracting States only if such property is located in that Contracting State.

(5) Income from the rental of tangible property (movable property) shall be treated as income from sources within one of the Contracting States only if such property is located in that Contracting State. Income from the rental of ships or aircraft derived by a person not engaged in the operation of ships or

aircraft in international traffic shall be treated as income from sources within a Contracting State only if the lessee is a resident of that Contracting State.

(6) Income received by an individual for his performance of labor or personal services, whether as an employee or in an independent capacity, or for furnishing the personal services of another person and income received by a corporation for furnishing the personal services of its employees or others, shall be treated as income from sources within one of the Contracting States only to the extent that such services are performed in that Contracting State. Income from personal services performed aboard ships or aircraft operated by a resident of one of the Contracting States in international traffic shall be treated as income from sources within that Contracting State if rendered by a member of the regular complement of the ship or aircraft. For purposes of this paragraph, income from labor or personal services includes pensions (as defined in paragraph (3) of Article 23 (Private Pensions and Annuities)) paid in respect of such services. Notwithstanding the preceding provisions of this paragraph, remuneration described in Article 22 (Governmental Functions) and payments described in Article 24 (Social Security Payments) shall be treated as income from sources within one of the Contracting States only if paid by or from the public funds of that Contracting State or local authority thereof.

(7) Income from the purchase and sale of intangible or tangible personal (including movable) property (other than gains defined as royalties by paragraph (4) (b) of Article 14 (Royalties)) shall be treated as income from sources within one of the Contracting States only if such property is sold in that Contracting State.

(8) Notwithstanding paragraphs (1) through (7), industrial or commercial profits which are attributable to a permanent establishment which the recipient, a resident of one of the Contracting States, has in the other Contracting State, including income derived from real property and natural resources and dividends, interest, royalties (as defined in paragraph (4) of Article 14 (Royalties)), and capital gains, but only if the rights or property giving rise to such income, dividends, interest, royalties, or capital gains are effectively connected with such permanent establishment, shall be treated as income from sources within that other Contracting State.

(9) The source of any item of income to which paragraphs (1) through (8) of this Article are not applicable shall be determined by each of the Contracting States in accordance with its own law. Notwithstanding the preceding sentence, if the source of any item of income under the laws of one Contracting State is different from the source of such item of income under the laws of the other Contracting State or if the source of such income is not readily determinable under the laws of one of the Contracting States, the competent authorities of the Contracting States may, in order to prevent double taxation or further any other purpose of this Convention, establish a common source of the item of income for purposes of this Convention.

ARTICLE 7
<u>Nondiscrimination</u>

Government of the other Contracting State, by any local authority thereof, the central bank of that other Contracting State, or any instrumentality wholly owned by that Government or that central bank or both, not subject to tax by that other Contracting State on its income.

(4) Paragraph (2) shall not apply if the recipient of the interest, being a resident of one of the Contracting States, has a permanent establishment in the other Contracting State and the indebtedness giving rise to the interest is effectively connected with such permanent establishment. In such case, paragraph (6) (a) of Article 8 (Business Profits) shall apply.

(5) Where any amount designated as interest paid to any related person exceeds an amount which would have been paid to an unrelated person, the provisions of this Article shall apply only to so much of the interest as would have been paid to an unrelated person. In such a case the excess payment may be taxed by each Contracting State according to its own law, including the provisions of this Convention where applicable.

(6) The term "interest" as used in this Convention means income from bonds, debentures, Government securities, notes, or other evidences of indebtedness, whether or not secured and whether or not carrying a right to participate in profits, and debt-claims of every kind as well as all other income which, under the taxation law of the Contracting State in which the income has its source, is assimilated to income from money lent.

## ARTICLE 14
### Royalties

(1) The tax imposed by one of the Contracting States on royalties derived from sources within that Contracting State by a resident of the other Contracting State shall not exceed 15 percent of the gross amount thereof, except as provided in paragraphs (2) and (3).

(2) Royalties derived from copyrights, or rights to produce or reproduce any literary, dramatic, musical, or artistic work, by a resident of one Contracting State, as well as royalties received as consideration for the use of, or the right to use, motion picture films including films and tapes used for radio or television broadcasting, may not be taxed by the other Contracting State at a rate of tax which exceeds 10 percent of the gross amount of such royalties.

(3) Paragraphs (1) and (2) shall not apply if the recipient of the royalty being a resident of one of the Contracting States, has in the other Contracting State a permanent establishment and the right or property giving rise to the royalties is effectively connected with such permanent establishment. In such a case, paragraph (6) (a) of Article 8 (Business Profits) shall apply.

(4) The term "royalties" as used in this Article means--
    (a) Payment of any kind made as consideration for the use of, or the right to use, copyrights of literary, artistic, or scientific works, copyrights of motion picture films or films or

      tapes used for radio or television broadcasting, patents, designs, models, plans, secret processes or formulae, trademarks, or other like property or rights, or knowledge, experience, or skill (know-how), or ships or aircraft (but only if the lessor is a person not engaged in the operation in international traffic of ships or aircraft), and

           (b) Gains derived from the sale, exchange, or other disposition of any such property or rights (other than ships or aircraft) to the extent that the amounts realized on such sale, exchange, or other disposition for consideration are contingent on the productivity, use, or disposition of such property or rights.

The term does not include any royalties, rentals or other amounts paid in respect of the operation of mines, quarries, or other natural resources.

    (5) Where an amount is paid to a related person which would be treated as royalty but for the fact that it exceeds an amount which would have been paid to an unrelated person, the provisions of this Article shall apply only to so much of the royalty as would have been paid to an unrelated person. In such a case, the excess payment may be taxed by each Contracting State according to its own law, including the provisions of this Convention where applicable.

## ARTICLE 15
### Income from Real Property

    (1) Income from real property, including royalties and other payments in respect of the exploitation of natural resources and gains derived from the sale, exchange, or other disposition of such property or of the right giving rise to such royalties or other payments, may be taxed by the Contracting State in which such real property or natural resources are situated. For purposes of this Convention, interest on indebtedness secured by real property or secured by a right giving rise to royalties or other payments in respect of the exploitation of natural resources shall not be regarded as income from real property.

    (2) Paragraph (1) shall apply to income derived from the usufruct, direct use, letting, or use in any other form of real property.

## ARTICLE 16
### Capital Gains

    (1) A resident of one of the Contracting States shall be exempt from tax by the other Contracting State on gains from the sale, exchange, or other disposition of capital assets unless--

          (a) The gain is derived by a resident of one of the Contracting States from the sale, exchange, or other disposition of property described in Article 15 (Income from Real Property) situated within the other Contracting State.

          (b) The recipient of the gain, being a resident of one of the Contracting States, has a permanent establishment in the other Contracting State and the property giving rise to the gain is effectively connected with such permanent establishment, or

recipient under the internal laws of the Contracting State of which he is a resident.

## ARTICLE 24
### Social Security Payments

Social security payments and other public pensions paid by one of the Contracting States to an individual who is a resident of the other Contracting State (or in the case of such payments by Korea, to an individual who is a citizen of the United States) shall be taxable only in the first-mentioned Contracting State. This Article shall not apply to payments described in Article 22 (Governmental Functions).

## ARTICLE 25
### Exemption from Social Security Taxes

(1) The taxes imposed by Chapter 21 of the Internal Revenue Code shall not apply with respect to wages paid for services performed in Guam by a resident of Korea while in Guam on a temporary basis as a non-immigrant alien admitted to Guam pursuant to section 101 (a) (15) (H) (ii) of the United States Immigration and Nationality Act (8 U.S.C. 1101 (a) (15) (H) (ii)).

(2) The exemption provided in paragraph (1) shall continue only so long as the similar exemption provided by section 3121 (b) (18) of the Internal Revenue Code.

## ARTICLE 26
### Diplomatic and Consular Officers

Nothing in this Convention shall affect the fiscal privileges of diplomatic and consular officials under the general rules of international law or under the provisions of special agreements.

## ARTICLE 27
### Mutual Agreement Procedure

(1) Where a resident of one of the Contracting States considers that the action of one or both of the Contracting States results or will result for him in taxation not in accordance with this Convention, he may, notwithstanding the remedies provided by the national laws of the Contracting States, present his case to the competent authority of the Contracting State of which he is a resident. Should the resident's claim be considered to have merit by the competent authority of the Contracting State to which the claim is made, it shall endeavor to come to an agreement with the competent authority of the other Contracting State with a view to avoiding taxation contrary to the provisions of this Convention.

(2) The Competent authorities of the Contracting States shall endeavor to resolve by mutual agreement any difficulties or doubts arising as to the application of this Convention. In particular, the competent authorities of the Contracting States may agree--
    (a) To the same attribution of industrial or commercial profits to a resident of one of the Contracting States and its permanent establishment situated in the other Contracting State;
    (b) To the same allocation of income, deductions, credits, or allowances between a person subject to the taxing jurisdiction of one of the Contracting States and any related person;
    (c) To the same determination of the source of particular items of income;
    (d) To the uniform accounting for income and deductions; or
    (e) To the same meaning of any term used in this Convention.

(3) The competent authorities of the Contracting States may communicate with each other directly for the purpose of reaching an agreement in the sense of this Article. When it seems advisable for the purpose of reaching agreement, the competent authorities may meet together for an oral exchange of opinions.

(4) In the event that the competent authorities reach such an agreement, taxes shall be imposed on such income, and refund or credit of taxes shall be allowed, by the Contracting States in accordance with such agreement.

## ARTICLE 28
### Exchange of Information

(1) The competent authorities shall exchange such information as is necessary for carrying out the provisions of this Convention or for the prevention of fraud or for the administration of statutory provisions concerning taxes to which this Convention applies provided the information is of a class that can be obtained under the laws and administrative practices of each Contracting State with respect to its own taxes.

(2) Any information so exchanged shall be treated as secret, except that such information may be--
    (a) Disclosed to any person concerned with, or
    (b) Made part of a public record with respect to, the assessment, collection, or enforcement of, or litigation with respect to, the taxes to which this Convention applies.

(3) No information shall be exchanged which would be contrary to public policy.

(4) If specifically requested by the competent authority of one of the Contracting States, the competent authority of the other Contracting State shall provide information under this Article in the form of depositions of witnesses and copies of unedited original documents (including books, papers, statements, records, accounts, or writings) to the same extent such depositions and documents can be obtained under the laws and administrative practices of each Contracting State with respect to its own taxes.

(5) The exchange of information shall be either on a routine basis or on request with reference to particular cases. The competent authorities of the Contracting States may agree on the list of information which shall be furnished on a routine basis.

(6) The competent authorities of the Contracting States shall notify each other of any amendments of the tax laws referred to in paragraph (1) of Article 1 (Taxes Covered) and of the adoption of any taxes referred to in paragraph (2) of Article 1 (Taxes Covered) by transmitting the texts of any amendments or new statutes at least once a year.

(7) The competent authorities of the Contracting States shall notify each other of the publication by their respective Contracting States of any material concerning the application of this Convention, whether in the form of regulations, rulings, or judicial decisions by transmitting the texts of any such materials at least once a year.

ARTICLE 29
Extension to Territories

(1) Either one of the Contracting States may, at any time while this Convention continues in force, by a written notification given to the other Contracting State through diplomatic channels, declare its desire that the operation of this Convention, either in whole or in part or with such modifications as may be found necessary for special application in a particular case, shall extend to all or any of the areas (to which this Convention is not otherwise applicable) for whose international relations it is responsible and which impose taxes substantially similar in character to those which are the subject of this Convention. When the other Contracting State has, by a written communication through diplomatic channels, signified to the first-mentioned Contracting State that such notification is accepted in respect of such area or areas, and the notification and communication have been ratified and instruments of ratification exchanged, this Convention, in whole or in part, or with such modifications as may be found necessary for special application in a particular case, as specified in the notification, shall apply to the area or areas named in the notification and shall enter into force and effect on and after the date or dates specified therein. None of the provisions of this Convention shall apply to any such area in the absence of such acceptance and exchange of instruments of ratification in respect of that area.

(2) At any time after the date of entry into force of an extension under paragraph (1), either of the Contracting States may, by 6 months' prior notice of termination given to the other Contracting State through diplomatic channels, terminate the application of this Convention to any area to which it has been extended under paragraph (1), and in such event this Convention shall cease to apply and have force and effect, beginning on or after the first day of January next following the expiration of the 6-month period, to the area or areas named therein, but without affecting its continued application to the United States, Korea, or to any other area to which it has been extended under paragraph (1).

(3) In the application of this Convention in relation to any area to which it is extended by notification