# EXHIBIT C

RECEIVED

MAR 1 9 1992

 **SAMSUNG** Electronics

WANG PATENT GROUP

10TH FL. SAMSUNG MAIN BLDG.
250-2-KA, TAEPYUNG-RO, CHUNG-KU,
SEOUL, KOREA
C.P.O.BOX 8780, TLX : KORSST K27970
FAX : 727-7025, 753-0967/8, TEL : 727-7019

VIA FACSIMILE & DHL

March 18, 1992

Michael H. Shanahan, Esq.
Chief Patent Counsel
Wang Laboratories, Inc.
One Industrial Avenue
Lowell, MA 01851
U.S.A.

EXHIBIT
4
Sw 9/08/05

Re:  Patent License Agreement

Dear Michael:

    Please find the enclosed patent license agreement signed
by Samsung for your file. We are now processing to obtain the
Korean governmental approval. When the government approves it,
we will immediately let you know.

Very truly yours,

Gwangho Kim
Legal Counsel

cc: Thomas J. Scott, Jr.

GW0000003741

# SIMM TECHNOLOGY PATENT LICENSE AGREEMENT

This Agreement is made this 17th day of February, 1992 by and between

Wang Laboratories, Inc., a corporation organized and existing under the laws of the Commonwealth of Massachusetts, United States of America and having a principal place of business at One Industrial Avenue, Lowell, Massachusetts 01851 (hereinafter "WANG"), and;

Samsung Electronics Co., Ltd., a corporation organized and existing under the laws of Korea and having a principal place of business at 250, Taepyung-ro, 2-Ka, Chung-ku, Seoul, Korea (hereinafter "LICENSEE").

## RECITALS

WANG is the owner of the following United States patents (hereinafter "WANG PATENTS") relating to single in-line memory modules (hereinafter "SIMMs"):

United States Patent No. 4,656,605 for "Single In-Line Memory Module";

and

United States Patent No. 4,727,513 for "Signal In-Line Memory Module."

LICENSEE wants to acquire a nonexclusive license under the WANG PATENTS. Wang has the right to grant a nonexclusive license to

GW0000003742

- 2 -

LICENSEE under the WANG PATENTS and is willing to do so on the terms and conditions recited in this Agreement.

NOW, THEREFORE, WANG and LICENSEE agree as follows.

Terms appearing in bold type are defined in Article 7 of this Agreement.

## ARTICLE 1.   LICENSE GRANT

1.01  WANG hereby grants to LICENSEE during the term of this Agreement a nontransferable, nonexclusive world-wide license under the WANG PATENTS to make, have made, to use and to sell **LICENSED SIMMs**.  LICENSEE shall have no right to grant sublicenses under the WANG PATENTS except to its **SUBSIDIARIES**. This License provides license or release for any **LICENSED SIMM** sold either directly or indirectly into the United States either before or after the **Effective Date** of this Agreement.  WANG agrees that it will make no other claim for use of any other patent owned by WANG for any **LICENSED SIMM** covered by this Agreement.

## ARTICLE 2.   ROYALTY PAYMENTS AND ACCOUNTING

2.01  Within forty-five (45) days after the **Effective Date** of this Agreement, LICENSEE shall pay to WANG a one-time administrative licensing fee of Fifty Thousand (50,000) United States Dollars which is nonrefundable and not creditable against royalties payable under other provisions of this Article 2.

GW0000003743

- 3 -

2.02  LICENSEE shall pay to WANG for past infringement a royalty payment equal to two and one half percent (2.5%) of the **Net Sales** Value of **LICENSED SIMMs** manufactured, used or sold by LICENSEE in the United States between August 8, 1990 and December 31, 1991.  For purposes of administration of this License, LICENSEE shall pay a royalty of 2.5% on all sales, use or manufacture of **LICENSED SIMMs** directly by it in the United States between August 8, 1990 and December 31, 1991.  LICENSEE shall pay a royalty of 2.5% on seven and eight-tenths percent (7.8%) of **LICENSED SIMMs** sold outside the United States.  This percent is applied to sales outside the United States for administrative convenience based on LICENSEE's sales activity which would result in **LICENSED SIMMs** being indirectly imported into the United States.  The royalty payment for past infringement shall be payable to Wang forty-five days after the **Effective Date** of this Agreement.

2.03  During the term of this Agreement, LICENSEE shall pay to WANG a running royalty of three percent (3%) of the **Net Sales Value** of all **LICENSED SIMMs** made, used or sold by LICENSEE in the United States on or after January 1, 1992.  However, at the option of the LICENSEE, on or after July 1, 1992, the LICENSEE may pay WANG the sum of Six Hundred Thousand (600,000) United States Dollars to convert the running royalty thereafter to two and three-quarter percent (2.75%) from three percent (3%). For purpose of administration of this License, LICENSEE shall pay a royalty of 3% or 2.75%, whichever is then effective on all sales, use or manufacture of **LICENSED SIMMs** directly by it in the

GW0000003744

- 4 -

United States on or after January 1, 1992. LICENSEE shall pay a
royalty of 3% or 2.75%, whichever is then effective on five
percent (5%) of **LICENSED SIMMs** sold outside the United States.
This percent is applied to sales outside the United States for
administrative convenience based on LICENSEE's sales activity
which would result in **LICENSED SIMMs** being indirectly imported
into the United States. This percent will be reviewed on or
before January 1, 1995 to be effective thereafter based on
LICENSEE's sales activity at that time.

2.04  Within forty-five days after the **Effective Date**
of this Agreement, LICENSEE shall render a written report to WANG
showing the amount of royalties payable under paragraph 2.02 and
the basis upon which such amount was determined.

2.05  Within sixty days after the end of each
**Semi-Annual Period** during the term of this Agreement (and within
sixty days after the expiration or termination of this
Agreement), LICENSEE shall render a written report to WANG
showing the amount of royalties payable under paragraph 2.03 for
such **Semi-Annual Period** and the basis upon which it was
determined, or, if such is the case, that no fee is payable and
the basis upon which that was determined. Upon receipt of such
written report, Wang will present an invoice for the royalties so
that payment can be made within said period.

2.06  Upon written request to WANG by LICENSEE for the
purpose of filing a report pursuant to this Article 2, Wang shall
inform LICENSEE of the **Net Sales Value** applicable under paragraph

GW0000003745

- 5 -

7.02(b) above to a specified **LICENSED SIMM** for the immediately preceding or other specified **Semi-Annual Period**.

2.07  Only one royalty payment shall be payable by LICENSEE under this Agreement for any **LICENSED SIMM**.  In the event a royalty would be payable for any item under both paragraphs 2.02 and 2.03 hereof, only the royalty under paragraph 2.02 shall be payable.

2.08  No royalty shall be payable by LICENSEE under this Agreement for any **LICENSED SIMM** for which a royalty already was paid to WANG by a third party pursuant to an Agreement licensing such third party under the WANG PATENTS.  In that event, however, LICENSEE shall nevertheless (a) include such **LICENSED SIMMs** in the appropriate **Semi-Annual Period** written report provided to WANG by LICENSEE pursuant to this Article 2, and (b) provide in such report the basis on which LICENSEE asserts that such royalty was paid to WANG for such **LICENSED SIMMs**, including the identity of such third party.  LICENSEE shall pay the royalty for such **LICENSED SIMMs** within thirty days of receipt of written notice from WANG that such third party did not, in fact, pay such royalty to WANG.  In the event multiple royalty payments are actually made to WANG for any item pursuant to this Agreement and another agreement licensing the WANG PATENTS, WANG shall reimburse either LICENSEE or the third party in accordance with reasonable written instructions submitted jointly to WANG by LICENSEE and the third party within six months of such multiple royalty payments.  No royalty shall be payable

by LICENSEE for any LICENSED SIMMs sold to IBM, Hewlett-Packard and any other licensee who is licensed to acquire LICENSED SIMMs sold by LICENSEE without any other additional royalty payment thereon to WANG.  WANG shall inform LICENSEE on a periodic basis of any licensee of WANG licensed to make, use or sell LICENSED SIMMs.

2.09  No royalty shall be payable under this Agreement by LICENSEE for LICENSED SIMMs sold by it to WANG.

2.10  LICENSEE shall keep such records as will be adequate to establish the accuracy of the reports and the computation of royalties due under this Agreement.  LICENSEE agrees to maintain adequate accounting records as to LICENSED SIMMs to determine the correctness of such reports and computations for a period of three years from the end of any Semi-Annual Period.  WANG may conduct inspections of such records during reasonable business hours and on reasonable notice to LICENSEE not more than once annually.  Such inspections shall be conducted by an auditor designated by WANG and acceptable to LICENSEE.  LICENSEE's acceptance of such auditor designated by WANG shall not be unreasonably withheld.  The auditor shall report to WANG only the amount of fees due and payable to WANG and the basis upon which it was determined.  If royalties are found to have been understated by five (5%) percent or more, LICENSEE shall reimburse WANG for its costs and expenses incurred in having the inspection conducted.

2.11  All sums payable to WANG pursuant to this Agreement shall be paid in United States Dollars.  In the event royalties accrue in a currency other than United States Dollars, those royalties shall be converted to United States Dollars at the rate for which United States Dollars were publicly traded in exchange for the other currency by Korea Foreign Exchange Bank, on the last day of the **Semi-Annual Period** during which the royalties accrued.  LICENSEE's reports, as required by Section 2.04 and 2.05 of this Article 2, shall set forth the computation of the number of United States Dollars remitted.

2.12  In the event that any payment to be made pursuant to this Article 2 is made after the date by which payment is due, such late payment shall be increased to further include a late payment charge at the rate of 1% of the payment amount for each calendar month or part of a calendar month during the period during which the amount due remains unpaid.

2.13  If, during the term of this Agreement, WANG grants to another licensee a license under the WANG PATENTS of substantially similar type and scope as the license granted in Article 1 hereof at a royalty rate or rates more favorable than that provided in Article 2 hereof, then Wang shall promptly notify LICENSEE and shall grant to LICENSEE such more favorable rate(s) subject to the same terms and conditions applicable to the other licensee.  Any sums payable to LICENSEE as a result of a more favorable rate under Section 2.02 shall be creditable against future royalties due under Section 2.03.

GW0000003748

- 8 -

2.14 If, during the term of this Agreement, a court with proper authority or any official or official body of an administrative agency with proper authority determines any claim of the WANG PATENTS to be invalid, LICENSEE may decline to continue the royalty payments required under paragraph 2.03 for products covered by that claim and place such payments in escrow until a final disposition of such invalidity determination. If such invalidity determination is reversed or vacated, LICENSEE shall pay the escrowed payment when such reversal or vacation order is final. If such invalidity determination becomes final before a court of last resort, any escrowed amount may be released and be returned to LICENSEE.

ARTICLE 3.  WARRANTIES AND LIABILITY

3.01  WANG represents and warrants that it has the right to grant the license granted to LICENSEE pursuant to this Agreement.

3.02  Subject to the provisions of paragraph 2.14, nothing in this Agreement shall be construed as:

(a)  a warranty or representation by WANG as to the validity or scope of any patent; or

(b)  a warranty or representation by WANG that any manufacture, use, lease, or sale of any product does not or will not infringe patents, copyrights, industrial design rights or other proprietary rights owned or controlled by third parties. WANG shall not be liable to LICENSEE directly or as an indemnitor of LICENSEE or LICENSEE's customers as a consequence of any

GW0000003749

- 9 -

alleged infringement of any such patents, copyrights, industrial design rights or other proprietary rights.

3.03  WANG makes no warranty or representation, express or implied, including any representation or warranty as to the results obtainable by LICENSED SIMMs or the use thereof and further including, but not being limited to, any WARRANTY OF MERCHANTABILITY or any warranty of fitness for a particular purpose with respect to any LICENSED SIMMs or with respect to use thereof.

3.04  LICENSEE agrees that WANG will not be responsible for any loss or damage as a direct or indirect result of any use, manufacture or sale of any LICENSED SIMM by LICENSEE or its customers.

3.05  In no event shall Wang have any liability, in contract, tort or otherwise, arising out of or in any way connected with this Agreement to pay or return to LICENSEE royalties paid hereunder by LICENSEE to WANG except as set forth in Section 2.08, 2.13, 2.14 or 3.01.

ARTICLE 4.  TERM AND TERMINATION

4.01  Unless terminated earlier under a provision of this Article 4, the license granted to LICENSEE under this Agreement shall extend from the Effective Date to the date of expiration of the last to expire of the WANG PATENTS.  Unless terminated earlier under a provision of this Article 4, the term of this Agreement shall extend from the Effective Date to the

GW0000003750

- 10 -

date of termination or completion of performance of all licenses, rights and obligations hereunder.

4.02  LICENSEE may terminate this Agreement, either in its entirety, or with respect to any type or model of **LICENSED SIMMs**, at any time, upon forty-five (45) days written notice to WANG.

4.03  WANG may terminate the licenses granted to LICENSEE under this Agreement for breach or default by LICENSEE at any time upon thirty days written notice to LICENSEE identifying such breach or default; provided, however, that if LICENSEE satisfactorily remedies such breach or default within the thirty days notice period, then the licenses granted herein by WANG to LICENSEE shall not terminate.

**ARTICLE 5.  NOTICES**

5.01  Notices, reports and communications hereunder shall be deemed to have been sufficiently given if in writing and sent by registered mail, postage prepaid to the other party at the address given below.  Until further notice, all notices shall be addressed as follows:

GW0000003751

- 11 -

If from WANG to LICENSEE:

    Senior Executive Managing Director
     of Planning Department
    Samsung Electronics, Ltd. (Semiconductor Business)
    10th Fl., Samsung Main Bldg.
    250, 2-Ka, Taepyung-Ro, Chung-ku
    Seoul, Korea

If from LICENSEE to WANG:

    Michael Shanahan
    Chief Patent Counsel
    Wang Laboratories, Inc.
    One Industrial Avenue
    Lowell, Massachusetts  01851

Either party may change such address by written notice to the other party.

## ARTICLE 6.  MISCELLANEOUS PROVISIONS

6.01  Assignment.  LICENSEE may assign this Agreement in whole or in part only with the prior written consent of WANG, which shall not be unreasonably withheld.  WANG may assign this Agreement without the written consent of LICENSEE, provided that the assignee expressly assumes all of WANG's obligations under this Agreement by a writing delivered to LICENSEE.

6.02  Agency.  WANG and LICENSEE agree and stipulate that LICENSEE shall not be construed as acting as an agent or representative of WANG in any dealings which LICENSEE may have with any other person, firm or corporation and that LICENSEE has no power to act for or legally bind WANG in any transaction.

6.03  Applicable Law.  This Agreement shall be interpreted and the rights and liabilities of the parties

GW0000003752

- 12 -

determined in accordance with the laws of the Commonwealth of Massachusetts.

6.04  Severability.  The terms and conditions of this Agreement are severable.  If any condition of this Agreement is found to be illegal or unenforceable under any rule of law, all other terms shall remain in force.  Further, the term or condition which is held to be illegal or unenforceable shall remain in effect as far as possible in accordance with the intention of the parties.

6.05  Costs and Attorneys' Fees.  Except in the case of WANG's petition in ITC, in the event it is necessary for either party to commence legal proceedings to enforce this Agreement, or to collect amounts due hereunder, the winning party will be entitled to recover from the losing party its costs of suit and collection, including attorneys' fees.

6.06  Entire Agreement.  This Agreement constitutes the complete and exclusive statement of the agreement between WANG and LICENSEE with respect to the subject matter indicated, oral or written, relating to the subject matter of this Agreement. There are no understandings, representations or warranties of any kind, oral or written, express or implied, with respect to the subject matter indicated above, except as expressly set forth herein.  Failure by either party to enforce any provision of this Agreement shall not be deemed a waiver of that provision or of any other provision of this Agreement.  Any claim of waiver of any right, obligation, term or condition of this Agreement and

GW0000003753

any claim that any provision of this Agreement has been modified or amended shall be null and void unless such waiver, modification or amendment is made in writing and signed by authorized representatives of both LICENSEE and WANG.

6.07 <u>Tax</u>. All taxes imposed as a result of the existence of this agreement or the performance hereunder shall be paid by WANG if so required by applicable law. LICENSEE shall withhold the amount of such taxes levied by the Government of Korea on the payment to be made by LICENSEE to WANG. LICENSEE shall transmit to Wang official tax receipts or other evidence issued by said appropriate tax authorities.

6.07 <u>Confidentiality</u>. Other than revealing the existence of this Agreement, neither party shall divulge the terms and conditions of this Agreement to any third party except as required by law or upon the written consent of the other party. This consent will not be unreasonably withheld.

<u>Article 7. DEFINITIONS</u>

7.01 "LICENSED SIMM" means any 9-bit organization, 30 pin memory module using an epoxy glass printed circuit board and wherein one of the 9-bits is a parity bit or any other module which the parties agree to be subject of this agreement.

7.02 "Net Sales Value" is defined as follows:

(a) In the case of a LICENSED SIMM which either (i) is sold separately as such by LICENSEE for full value to a Bona-Fide Purchaser or (ii) is sold by LICENSEE

GW0000003754

- 14 -

incorporated in an assembly, but which was purchased separately from a **Bona-Fide Supplier**, **Net Sales Value** means the gross billing price for such **PATENTED SIMM** charged or paid, respectively, by LICENSEE minus:

(i) container or packaging costs and actual freight charges included in such price;

(ii) trade, quantity, or cash discounts, if any, actually allowed, but included in such price;

(iii) sales taxes and other governmental charges on the sale, transportation or delivery of such product included in such price;

(iv) subsequent allowances for actual returns of such **LICENSED SIMM**;

(v) premiums on insurance against loss or damage in transit included in such price; AND

(vi) sales commission.

(b) In all other cases (including, without limitation, **LICENSED SIMMs** (a) assembled from parts provided in whole or in part on consignment by third parties, (b) purchased by LICENSEE from other than a **Bona-Fide Supplier**, (c) sold as functioning devices to other than a **Bona-Fide Purchaser**, or (d) sold incorporated in an assembly made by LICENSEE), **Average Net Sales Price** derived from in subparagraph 7.02(a) for the same or generally comparable product during the same **Semi-Annual Period** shall be used.

- 15 -

7.03  "Bona-Fide Purchaser" and "Bona-Fide Supplier" means a purchaser or a supplier, respectively:

(a)  in which LICENSEE, its officers and directors have no financial interest and over which LICENSEE, its officers and directors exercise no control; and

(b)  which has no financial interest in LICENSEE and which exercises no control over LICENSEE and the officers and directors of which have no financial interest in LICENSEE and exercise no control over LICENSEE, and

(c)  which is not owned or controlled by any third party which also owns or controls LICENSEE.

7.04  "Subsidiary" means a corporation or other entity which LICENSEE now or hereafter owns or controls, directly or indirectly, more than fifty percent (50%) of its voting stocks or rights, provided, however, that such corporations and other entities shall be regarded as subsidiaries only so long as such ownership or control exists.

7.05  "Semi-Annual Period" means any period of six consecutive calendar months commencing on the first day of January or July.  "Semi-Annual Period" also means the portion of such a six-month period which commences on the Effective Date.

7.06  "Effective Date" means the date of approval by the Republic of the Korean Government of this Agreement by WANG and LICENSEE.

- 16 -

IN WITNESS WHEREOF, the parties hereto have executed

this Agreement as of the day and year written below.

WANG LABORATORIES, INC.                SAMSUNG ELECTRONICS CO., LTD.

Signed by: _____    _____
           Edward D. Grayson           Hyeon G. Kim

Title:  Senior Vice President          Senior Executive Managing
        and General Counsel              Director
                                       Strategic Planning
                                       Semiconductor Business

Date:  February 17, 1992               February 17, 1992


Commonwealth of Massachusetts
Middlesex, ss.

    Before me on February 17, 1992, the above-named Edward D. Grayson,
Senior Vice President and General Counsel, being personally known to
me did appear and subscribe his name to the foregoing and affirmed that
the same was his free act and deed.

                                       _____
                                       Notary Public
                                       My Commission Expires: 10/1/9

GW0000003757