# EXHIBIT D

## SIMM TECHNOLOGY PATENT LICENSE AGREEMENT

This Agreement is made this __th day of March, 1992 by and between

Wang Laboratories, Inc., a corporation organized and existing under the laws of the Commonwealth of Massachusetts, United States of America, and having a principal place of business at One Industrial Avenue, Lowell, Massachusetts 01851 (hereinafter "WANG"), and;

Goldstar Electron Co., Ltd., a corporation organized and existing under the laws of Korea and having a principal place of business at 50 Hyang Jeong-Dong, Cheong Ju, Korea 360-480 (hereinafter "LICENSEE").

RECITALS

WANG is the owner of the following United States patents (hereinafter "WANG SIMM PATENTS") relating to single in-line memory modules (hereinafter "SIMMs"):

United States Patent No. 4,656,605 for "Single In-Line Memory Module";

and

United States Patent No. 4,727,513 for "Signal In-Line Memory Module."

Wang is also the owner of the following United States patents (hereafter "WANG PURCHASE PATENTS"):

EXHIBIT
6
SLP  9/88/05

(1)  4,146,898 for "Toner Transfer System"

(2)  4,297,042 for "Helical Print Head Mechanism"

(3)  4,410,896 for "Apparatus for Preventing Removal of Toner from Transferred Images"

(4)  4,508,463 for "High Density Dot Matrix Printer"

(5)  4,574,318 for "Tight Arrangement for Scanner - Digitizer"

(6)  4,628,431 for 'Power Supply On/Off Switching with Inrush Limiting"

(7)  4,688,031 for "Monochromatic Representation of Color Images"

(8)  4,703,318 for "Character-Based Monochromatic Representation of Color Images"

(9)  5,708,313 for "Tilt Apparatus for a Display Monitor"

(10) 4,749,364 for "Display attachment Apparatus"

LICENSEE wants to acquire a nonexclusive license under the **WANG SIMM PATENTS** and the assignment of the **WANG PURCHASE PATENTS**. Wang has the right to grant a nonexclusive license to LICENSEE under the **WANG SIMM PATENTS** and to assign the **WANG PURCHASE PATENTS** and is willing to do so on the terms and conditions recited in this Agreement.

NOW, THEREFORE, WANG and LICENSEE agree as follows.

In addition to the terms appearing in bold type above, other terms appearing in bold type are defined in Article 8 of this Agreement.

GW0000000227

## ARTICLE 1.   LICENSE GRANT

1.01  WANG hereby grants to LICENSEE during the term of this Agreement a nontransferable, nonexclusive world-wide license under the **WANG SIMM PATENTS** to make, have made, to use and to sell **LICENSED SIMMs**.  LICENSEE shall have no right to grant sublicenses under the **WANG SIMM PATENTS** except to its **SUBSIDIARIES**.  This License provides license or release for any **LICENSED SIMM** sold either directly or indirectly into the United States either before or after the **Effective Date** of this Agreement.  WANG agrees that it will make no other claim for use of any other patent owned by WANG for any **LICENSED SIMM** covered by this Agreement.

## Article 2:  ASSIGNMENT

2.01  On the **Effective Date** of this Agreement, WANG assigns by the assignment document attached hereto as Exhibit A to LICENSEE all WANG'S right, title and interest in the **WANG PURCHASE PATENTS**.  WANG retains a non-exclusive royalty-free fully paid-up license to practice the inventions disclosed and/or claimed in the **WANG PURCHASE PATENTS**.

## ARTICLE 3.   ROYALTY PAYMENTS AND ACCOUNTING

3.01  Within three (3) days of the **Effective Date** of this Agreement, LICENSEE shall pay by wire transfer to WANG a one-time administrative licensing fee of Fifty Thousand ($50,000) United States Dollars which is nonrefundable and not creditable

GW0000000228

- 4 -

against royalties payable under other provisions of this
Article 3.

3.02  Within three (3) days of the **Effective Date** of
this Agreement, LICENSEE shall pay to WANG by wire transfer for
use of the **WANG SIMM PATENTS** prior to April 1, 1992 and for the
assignment of the **WANG PURCHASE PATENTS** the sum of One Million
Two Hundred Thousand ($1,200,000) United States Dollars.
LICENSEE represents that Two Hundred Thousand ($200,000) United
States Dollars of the sum above is sufficient to provide payment
of a 3% running royalty on the **Net Sales Value** of LICENSEE'S or
its **SUBSIDIARIES** manufacture, sale or use of **LICENSED SIMMs** in
the United States and on 5% of the **Net Sales Value** of all
**LICENSED SIMMs** sold by LICENSEE or its **SUBSIDIARIES** outside the
United States in the period from January 1, 1992 to March 31,
1992.  As this Agreement is only effective after approval by the
Korean Government, LICENSEE warrants that it will make its best
efforts to obtain such approval in the month of April 1992.

3.03 During the term of this Agreement, LICENSEE shall
pay to WANG a running royalty of three percent (3%) of the **Net
Sales Value** of all **LICENSED SIMMs** made, used or sold by LICENSEE
and **SUBSIDIARIES** in the United States on or after April 1, 1992.
However, at the option of the LICENSEE, on or after October 1,
1992, the LICENSEE may pay WANG the sum of Six Hundred Thousand
(600,000) United States Dollars to convert the running royalty
thereafter to two and three-quarter percent (2.75%) from three
percent (3%).  For purposes of administration of this license,

GW0000000229

- 5 -

LICENSEE shall also pay a royalty of 3% or 2.75%, whichever is then effective on five percent (5%) of **LICENSED SIMMs** sold by LICENSEE and its **SUBSIDIARIES** outside the United States. This percent is applied to sales outside the United States for administrative convenience based on the overall sales activity of LICENSEE and its **SUBSIDIARIES** which would result in **LICENSED SIMMs** being indirectly imported into the United States. This percent will be reviewed on or before January 1, 1995 to be effective thereafter based on sales activity of LICENSEE and its **SUBSIDIARIES** at that time.

3.04  Within sixty days after the end of each **Semi-Annual Period** during the term of this Agreement (and within sixty days after the expiration or termination of this Agreement), LICENSEE shall render a written report to WANG showing the amount of royalties payable under paragraph 3.03 for such **Semi-Annual Period** and the basis upon which it was determined, or, if such is the case, that no fee is payable and the basis upon which that was determined. LICENSEE shall be responsible for reporting and paying any royalty owed as a result of any sale by its **SUBSIDIARIES**. Upon receipt of such written report, Wang will present an invoice for the royalties so that a wire transfer payment can be made within said period.

3.05  Upon written request to WANG by LICENSEE for the purpose of filing a report pursuant to this Article 3, Wang shall inform LICENSEE of the **Net Sales Value** applicable under paragraph

8.02(b) below to a specified LICENSED SIMM for the immediately preceding or other specified Semi-Annual Period.

3.06  No royalty shall be payable by LICENSEE under this Agreement for any LICENSED SIMM for which a royalty already was paid to WANG by a third party pursuant to an Agreement licensing such third party under the WANG SIMM PATENTS.  In that event, however, LICENSEE shall nevertheless (a) include such LICENSED SIMMs in the appropriate Semi-Annual Period written report provided to WANG by LICENSEE pursuant to this Article 3, and (b) provide in such report the basis on which LICENSEE asserts that such royalty was paid to WANG for such LICENSED SIMMs, including the identity of such third party.  LICENSEE shall pay the royalty for such LICENSED SIMMs within thirty days of receipt of written notice from WANG that such third party did not, in fact, pay such royalty to WANG.  WANG will confirm the non-payment on the request of LICENSEE.  In the event multiple royalty payments are actually made to WANG for any item pursuant to this Agreement and another agreement licensing the WANG SIMM PATENTS, WANG shall reimburse either LICENSEE or the third party in accordance with reasonable written instructions submitted jointly to WANG by LICENSEE and the third party within six months of such multiple royalty payments.  No royalty shall be payable by LICENSEE for any LICENSED SIMMs sold to IBM, Hewlett-Packard and any other licensee who is licensed to acquire LICENSED SIMMs sold by LICENSEE without any other additional royalty payment thereon to WANG.  WANG shall inform LICENSEE on a periodic basis

GW0000000231

of any licensee of WANG licensed to make, use or sell LICENSED SIMMs.

3.07  No royalty shall be payable under this Agreement by LICENSEE for LICENSED SIMMs sold by it to WANG.

3.08  LICENSEE and its SUBSIDIARIES shall keep such records as will be adequate to establish the accuracy of the reports and the computation of royalties due under this Agreement, including the prepayment of royalties under Section 3.02.  LICENSEE agrees to maintain adequate accounting records as to LICENSED SIMMs to determine the correctness of such reports and computations for a period of three years from the end of any Semi-Annual Period.  WANG may conduct inspections of such records during reasonable business hours and on reasonable notice to LICENSEE not more than once annually.  Such inspections shall be at WANG's expense and be conducted by an auditor designated by WANG and acceptable to LICENSEE.  LICENSEE agrees to assist and cooperate with the audit of its sublicensed SUBSIDIARIES.  Such assistance shall extend to the auditor and such SUBSIDIARY and shall include, but will not be limited to, the prompt response to requests for information from LICENSEE concerning its records, reports, computation of royalties and payment of royalties. LICENSEE's acceptance of such auditor designated by WANG shall not be unreasonably withheld.  The auditor shall report to WANG only the amount of fees due and payable to WANG and the basis upon which it was determined.  If royalties are found to have been understated by five (5%) percent cr more, LICENSEE shall

GW0000000232

reimburse WANG for its costs and expenses incurred in having the inspection conducted.

3.09  All sums payable to WANG pursuant to this Agreement shall be paid in United States Dollars.  In the event royalties accrue in a currency other than United States Dollars, those royalties shall be converted to United States Dollars at the rate for which United States Dollars were publicly traded in exchange for the other currency by Korea Foreign Exchange Bank, on the last day of the **Semi-Annual Period** during which the royalties accrued.  LICENSEE's reports, as required by Section 3.04 of this Article 3, shall set forth the computation of the number of United States Dollars remitted.

3.10  In the event that any payment to be made pursuant to this Article 3 is made after the date by which payment is due, such late payment shall be increased to further include a late payment charge at the rate of 1% of the payment amount for each calendar month or part of a calendar month during the period during which the amount due remains unpaid.

3.11  If, during the term of this Agreement, WANG grants to another licensee a license under the **WANG SIMM PATENTS** of substantially similar type and scope as the license granted in Article 1 hereof at a royalty rate or rates more favorable than that provided in Article 3 hereof, then Wang shall promptly notify LICENSEE and shall grant to LICENSEE such more favorable rate(s) subject to the same terms and conditions applicable to the other licensee.

GW0000000233

3.12 If, during the term of this Agreement, a court with proper authority or any official or official body of an administrative agency with proper authority determines any claim of the WANG PATENTS to be invalid, LICENSEE may decline to continue the royalty payments required under paragraph 3.03 for products covered by that claim and place such payments in escrow until a final disposition of such invalidity determination.  If such invalidity determination is reversed or vacated, LICENSEE shall pay the escrowed payment when such reversal or vacation order is final.  If such invalidity determination becomes final before a court of last resort, any escrowed amount may be released and be returned to LICENSEE.

## ARTICLE 4.  WARRANTIES AND LIABILITY

4.01  WANG represents and warrants that it has the right to grant the license and assignment granted to LICENSEE pursuant to this Agreement.

4.02  Subject to the provisions of paragraph 3.12, nothing in this Agreement shall be construed as:

(a)  a warranty or representation by WANG as to the validity or scope of any patent; or

(b)  a warranty or representation by WANG that any manufacture, use, lease, or sale of any product does not or will not infringe patents, copyrights, industrial design rights or other proprietary rights owned or controlled by third parties. WANG shall not be liable to LICENSEE directly or as an indemnitor

of LICENSEE or LICENSEE's customers as a consequence of any alleged infringement of any such patents, copyrights, industrial design rights or other proprietary rights.

4.03  WANG makes no warranty or representation, express or implied, including any representation or warranty as to the results obtainable by **LICENSED SIMMs** or the use thereof and further including, but not being limited to, any **WARRANTY OF MERCHANTABILITY** or any warranty of fitness for a particular purpose with respect to any **LICENSED SIMMs** or with respect to use thereof.

4.04  LICENSEE agrees that WANG will not be responsible for any loss or damage as a direct or indirect result of any use, manufacture or sale of any **LICENSED SIMM** by LICENSEE or its customers.

4.05  In no event shall Wang have any liability, in contract, tort or otherwise, arising out of or in any way connected with this Agreement to pay or return to LICENSEE royalties paid hereunder by LICENSEE to WANG except as set forth in Section 3.06, 3.12 or 4.01.

## ARTICLE 5.   TERM AND TERMINATION

5.01  Unless terminated earlier under a provision of this Article 5, the license granted to LICENSEE under this Agreement shall extend from the **Effective Date** to the date of expiration of the last to expire of the **WANG SIMM PATENTS**. Unless terminated earlier under a provision of this Article 5,

GW0000000235

the term of this Agreement shall extend from the **Effective Date** to the date of termination or completion of performance of all licenses, rights and obligations hereunder.

   5.02  LICENSEE may terminate this Agreement, either in its entirety, or with respect to any type or model of **LICENSED SIMMs**, at any time, upon forty-five (45) days written notice to WANG.

   5.03  WANG may terminate the licenses granted to LICENSEE under this Agreement for breach or default by LICENSEE at any time upon thirty days written notice to LICENSEE identifying such breach or default; provided, however, that if LICENSEE satisfactorily remedies such breach or default within the thirty days notice period, then the licenses granted herein by WANG to LICENSEE shall not terminate.

## ARTICLE 6.  NOTICES

   6.01  Notices, reports and communications hereunder shall be deemed to have been sufficiently given if in writing and sent by registered mail, postage prepaid to the other party at the address given below.  Until further notice, all notices shall be addressed as follows:

        If from WANG to LICENSEE:

             Dongwoo Chun
             Senior Managing Director
             Goldstar Electron Co., Ltd.
             50 Hyang Jeong-Dong
             Cheong Ju, Korea 360-480

GW0000000236

If from LICENSEE to WANG:

> Michael H. Shanahan
> Chief Patent Counsel
> Wang Laboratories, Inc.
> One Industrial Avenue
> Lowell, Massachusetts  01851

Either party may change such address by written notice to the other party.

## ARTICLE 7.  MISCELLANEOUS PROVISIONS

7.01  <u>Assignment</u>.  LICENSEE may assign this Agreement in whole or in part only with the prior written consent of WANG, which shall not be unreasonably withheld.  WANG may assign this Agreement without the written consent of LICENSEE, provided that the assignee expressly assumes all of WANG's obligations under this Agreement by a writing delivered to LICENSEE.

7.02  <u>Agency</u>.  WANG and LICENSEE agree and stipulate that LICENSEE shall not be construed as acting as an agent or representative of WANG in any dealings which LICENSEE may have with any other person, firm or corporation and that LICENSEE has no power to act for or legally bind WANG in any transaction.

7.03  <u>Applicable Law</u>.  This Agreement shall be interpreted and the rights and liabilities of the parties determined in accordance with the laws of the Commonwealth of Massachusetts.

7.04  <u>Severability</u>.  The terms and conditions of this Agreement are severable.  If any condition of this Agreement is

GW0000000237

found to be illegal or unenforceable under any rule of law, all other terms shall remain in force. Further, the term or condition which is held to be illegal or unenforceable shall remain in effect as far as possible in accordance with the intention of the parties.

7.05 <u>Costs and Attorneys' Fees</u>. Except in the case of WANG's petition in ITC, in the event it is necessary for either party to commence legal proceedings to enforce this Agreement, or to collect amounts due hereunder, the winning party will be entitled to recover from the losing party its costs of suit and collection, including attorneys' fees.

7.06 <u>Entire Agreement</u>. This Agreement and Attachment A constitutes the complete and exclusive statement of the agreement between WANG and LICENSEE with respect to the subject matter indicated, oral or written, relating to the subject matter of this Agreement. There are no understandings, representations or warranties of any kind, oral or written, express or implied, with respect to the subject matter indicated above, except as expressly set forth herein. Failure by either party to enforce any provision of this Agreement shall not be deemed a waiver of that provision or of any other provision of this Agreement. Any claim of waiver of any right, obligation, term or condition of this Agreement and any claim that any provision of this Agreement has been modified or amended shall be null and void unless such waiver, modification or amendment is

GW0000000238

made in writing and signed by authorized representatives of both
LICENSEE and WANG.

7.07 <u>Tax</u>.  All taxes imposed as a result of the
existence of this agreement or the performance hereunder shall be
paid by WANG if so required by applicable law.  LICENSEE shall
withhold the amount of such taxes levied by the Government of
Korea on the payment to be made by LICENSEE to WANG.  LICENSEE
shall transmit to Wang official tax receipts or other evidence
issued by said appropriate tax authorities.

7.08 <u>Confidentiality</u>.  Other than revealing the
existence of this Agreement, neither party shall divulge the
terms and conditions of this Agreement to any third party except
as required by law or upon the written consent of the other
party.  This consent will not be unreasonably withheld.

**Article 8.  DEFINITIONS**

8.01  "LICENSED SIMM" means any 9-bit organization, 30
pin memory module using an epoxy glass printed circuit board and
wherein one of the 9-bits is a parity bit or any other module
which the parties agree to be subject of this agreement.

8.02  "Net Sales Value" is defined as follows:
(a)  In the case of a **LICENSED SIMM** which either (i) is
sold separately as such by LICENSEE for full value to a
**Bona-Fide Purchaser** or (ii) is sold by LICENSEE
incorporated in an assembly, but which was purchased
separately from a Bona-Fide Supplier, Net Sales Value

GW0000000239

means the gross billing price for such **LICENSED SIMM** charged or paid, respectively, by LICENSEE minus:

(i)  container or packaging costs and actual freight charges included in such price;

(ii) trade, quantity, or cash discounts, if any, actually allowed, but included in such price;

(iii)  sales taxes and other governmental charges on the sale, transportation or delivery of such product included in such price;

(iv) subsequent allowances for actual returns of such **LICENSED SIMM**;

(v)  premiums on insurance against loss or damage in transit included in such price; AND

(vi) sales commission.

(b)  In all other cases (including, without limitation, **LICENSED SIMMs** (a) assembled from parts provided in whole or in part on consignment by third parties, (b) purchased by LICENSEE from other than a **Bona-Fide Supplier**, (c) sold as functioning devices to other than a **Bona-Fide Purchaser**, or (d) sold incorporated in an assembly made by LICENSEE), **Average Net Sales Price** derived from in subparagraph 8.02(a) for the same or generally comparable product during the same **Semi-Annual Period** shall be used.

8.03  "Bona-Fide Purchaser" and "Bona-Fide Supplier" means a purchaser or a supplier, respectively:

(a)  over which LICENSEE, its officers and directors exercise no control; and

(b)  which exercises no control over LICENSEE and the officers and directors of which exercise no control over LICENSEE, and

(c)  which is not owned or controlled by any third party which also owns or controls LICENSEE.

8.04  "SUBSIDIARY" means a corporation or other entity which LICENSEE now or hereafter owns or controls, directly or indirectly, more than fifty percent (50%) of the voting stocks or rights of such corporation or such other entity, provided, however, that such corporations and other entities shall be regarded as subsidiaries only so long as such ownership or control exists.

8.05  "Semi-Annual Period" means any period of six consecutive calendar months commencing on the first day of January or July.  "Semi-Annual Period" also means the portion of such a six-month period which commences on the Effective Date.

8.06  "Effective Date"  means the date of approval of this Agreement by the Korean Government.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the day and year written below.

WANG LABORATORIES, INC.                GOLDSTAR ELECTRON CO., LTD.

_____        _____
Edward D. Grayson                      Dongwoo Chun

Senior Vice President                  Senior Managing Director
and General Counsel


Date: _____          Date: _April 9, 1992_


Commonwealth of Massachusetts
Middlesex, ss.

Before me on March 25, 1992, the above-named
Edward D. Grayson, Senior Vice President and General
Counsel, being personally known to me did appear and
subscribe his name to the foregoing and affirmed that
the same was his free act and deed.

_____
Notary Public
My Commission Expires:  10/10/97

GW0000000242

Exhibit A

## ASSIGNMENT

**WHEREAS**, Wang Laboratories, Inc., a corporation organized and existing under the laws of the Commonwealth of Massachusetts, United States of America and having a principal place of business at One Industrial Avenue, Lowell, Massachusetts 01851 (hereinafter "WANG"), is now the sole owner of the following United States Letters Patent:

(1)  4,146,898 for "Toner Transfer System"

(2)  4,297,042 for "Helical Print Head Mechanism"

(3)  4,410,896 for "Apparatus for Preventing Removal of Toner from Transferred Images"

(4)  4,508,463 for "High Density Dot Matrix Printer"

(5)  4,574,318 for "Tight Arrangement for Scanner - Digitizer"

(6)  4,628,431 for "Power Supply On/Off Switching with Inrush Limiting"

(7)  4,688,031 for "Monochromatic Representation of Color Images"

(8)  4,703,318 for "Character-Based Monochromatic Representation of Color Images"

(9)  5,708,313 for "Tilt Apparatus for a Display Monitor"

(10) 4,749,364 for "Display attachment Apparatus"

**WHEREAS**, Goldstar Electron Co., Ltd., a corporation organized and existing under the laws of Korea and having a principal place of business at 50 Hyang Jeong-Dong, Cheong Ju,

GW0000000243

Korea 360-480 (hereinafter "Assignee"), is desirous of acquiring
the entire interest in said Letters Patent.

NOW, THEREFORE, in consideration of the sum of one
dollar and other valuable consideration, the receipt of which is
acknowledged, WANG hereby sells, assigns and transfers to
Assignee the entire right, title and interest in and to said
Letters Patent, to be held and enjoyed by Assignee, for its own
use and for its legal representatives and assigns, to the full
end of the term for which said Letters Patents are granted, as
fully and entirely as the same would have been held by WANG had
this assignment and sale not been made except that Wang retains a
non-exclusive, royalty-free fully paid-up license to make, use or
sell any invention disclosed and/or claimed in said Letters
Patent.

Executed on _____, 1992 at Lowell, Massachusetts.

Edward D. Grayson
Senior Vice President
Wang Laboratories, Inc.
One Industrial Avenue
Lowell, Massachusetts  01851

Commonwealth of Massachusetts
Middlesex

Before me, on March 25, 1992, the above-names Edward D. Grayson, Senior
Vice President and General Counsel being personally known to me did appear and
subscribe his name to the foregoing and affirmed that the same was his free act
and deed.

Consulate General of the
Republic of Korea Boston on    APR 2 0 1992

Wha Hyon JUNG

Notary Public
My Commission Expires: 10/10/97

GW0000000244