# EXHIBIT F

GetronicsWang Co., LLC

v.

Hynix Semiconductor, Inc.

and

Samsung Electronics Co., Ltd.

Case No. 04-12382RCL

United States District Court for the

District of Massachusetts

Expert Witness Report
of
Dong Soo Kim
October 28, 2005

GetronicsWang Co., LLC v. Hynix Semiconductor, Inc. and Samsung Electronics, Co., Ltd.

# INDEX

OPINION LETTER

| | | |
|---|---|---|
| I. | INTRODUCTION | 3 |
| II. | ASSIGNMENT | 3 |
| III. | EXPERT OPINION | 4 |
| IV. | WORK PERFORMED | 4 |
| V. | BASES FOR OPINION | 4 |
| VI. | CONCLUSION | 7 |
| VII. | EXPERT QUALIFICATION | 7 |
| A. | DOCUMENTS REVIEWED | 8 |
| B. | CURRICULUM VITAE | 8 |
| C. | EXPERT WITNESS TESTIMONY | 9 |

## I. INTRODUCTION

In 1992 and 1993, plaintiff GetronicsWang Co., LLC ("Wang") entered into licensing agreements (the "Agreements") for sales of its single in-line memory modules ("SIMMS"), the patents of which were registered in the United States, but not in Korea, with defendant Samsung Electronics Co., Ltd. ("Samsung") and with Hyundai Electronics Industries, Co., Ltd. and Goldstar Electronics Co., Ltd., predecessors in interest of defendant Hynix Semiconductor, Inc. (collectively "Hynix").

Pursuant to the Agreements, Samsung and Hynix paid royalties to Wang with regard to sales of products incorporating the SIMMS technology made by Samsung and Hynix. Samsung and Hynix withheld taxes from the royalty payments made to Wang and paid the taxes to the Korean National Tax Service ("NTS"). Those payments were made in Korean won.

In 1996, Wang initiated a Competent Authority Proceeding ("CAP") in an attempt to recover from the Korean government the taxes that Samsung and Hynix had withheld from their royalty payments. In 2002, as a result of the CAP, the American Internal Revenue Service ("IRS") and the NTS reached an agreement that the monies that had been withheld from the royalty payments as taxes should be refunded. The NTS refunded to Samsung and Hynix exactly the same amounts, in won, that Samsung and Hynix had paid to the NTS. Samsung and Hynix then forwarded those amounts, converted to United States dollars in accordance with the Agreements, to Wang.

Wang claims that Samsung and Hynix wrongfully withheld taxes from the royalty payments. Wang further claims that the payments made by Samsung and Hynix were deficient because they did not take into account the deterioration of the won against the dollar between the time the taxes were withheld and paid to the NTS and the time they were forwarded to Wang after the CAP. Wang has brought this action seeking, *inter alia*, to recover the differences in value caused by the currency fluctuation.

## II. ASSIGNMENT

The law firm of Nixon Peabody LLP, of Boston, Massachusetts, engaged me for the following:

(i) to explain the tax laws of Korea, in particular, the Korean Corporate Income Tax Act ("CITA"), and the Korean-U.S. income tax treaty ("Treaty") with respect to withholding taxes on royalty payments;

(ii) to explain the practice of the Korean tax authorities, including the NTS, as well as administrative rulings issued by them during the years in question as to royalty payments made by Korean companies to foreign companies;

(iii) to explain the restrictions on a Korean resident making royalty payments to a foreign company under the relevant Korean foreign exchange regulations in effect during the years in question;

3

(iv) to provide an expert opinion as to the consequences of failing to withhold taxes from payments made by a Korean resident to a foreign company; and

(v) to explain the nature of CAPs and to provide an expert opinion as to the meaning and consequences of the CAP in this case.

In particular, I have been engaged to offer an opinion as to whether, in light of the practices of the Korean tax authorities and the relevant Korean foreign exchange regulations, Samsung and Hynix were compelled to withhold taxes over the course of the Agreements prior to 2002.

I do not have any financial interest in the parties in this case. The fees for my services are not contingent upon the outcome of this case. I am being compensated for my services at the rate of $450.00 per hour.

## III. EXPERT OPINION

In my opinion, Samsung and Hynix acted in accordance with the practice of the Korean tax authorities and the foreign exchange regulations in effect during the years in question and in accordance with their legal duties as withholding agents under the Agreements by withholding taxes from the royalty payments they made to Wang under the Agreements. My opinion is not changed by the outcome of the CAP, which was simply a diplomatic and political accommodation mutually agreed to by the Korean and American governments and which did not purport to interpret or apply existing law or to establish any law for the future.

## IV. WORK PERFORMED

I have reviewed relevant opinions of the Korean courts as well as administrative rulings issued by the Korean tax authorities regarding the obligations of Korean companies who pay royalties to foreign companies to withhold taxes from the royalty payments made. I have also reviewed relevant Korean foreign exchange regulations and guidelines on remittance of payments overseas and withholding taxes, and the result of the CAP initiated by Wang. I have reviewed the complaint in this action as well as the Agreements. Finally, I have reviewed relevant provisions of the Korean tax laws which impose penalties and sanctions for the failure to withhold taxes from payments made by Korean companies to foreign companies.

## V. BASES FOR OPINION

(a) **CITA and Treaty**

Article 93(9) of the CITA (formerly, Article 55(1)(9) of the CITA) provides that where certain assets, information, or rights are used in Korea or remuneration for the use is paid domestically, such remuneration is Korean source income, unless the applicable income tax treaty provides otherwise. Unlike most income tax treaties of Korea under which royalty payments are sourced in a country from which the payments are made, Article 6(3) of the Treaty provides that royalty payments are sourced in a country where the underlying right is used.

4

(b) **Supreme Court Decision and Practice of Tax Authorities**

In 1992, immediately before Samsung and Hynix withheld taxes from the royalty payments made to Wang, the Korean Supreme Court examined whether royalty payments on patents, which are registered in the United States, but not in Korea, for the exclusive use within the United States would be Korean source income, and thus, would be subject to withholding tax in Korea. (Hyundai Motor Co., Ltd. v. Chongro Tax Office, 91 Nu 6887 (May 12, 1992).) In Hyundai Motor Co., the Supreme Court held that royalty payments made to a U.S. company for the use of the company's patents registered in the United States, but not in Korea, were not Korean source income of the company.

Both before and after the Supreme Court decision, the Korean tax authorities have consistently issued administrative rulings in which they rule that royalty payments are sourced in Korea if the payments are made for products produced in Korea using the underlying rights, even if patents for such rights are not registered in Korea (i.e., royalty payments are sourced in the place of production regardless of where the underlying rights are patented). In fact, Samsung, soon after the Supreme Court decision, requested an administrative ruling from the MOFE as to whether the royalty payments to be made to Wang would be Korean source and be subject to withholding tax in Korea. (The MOFE is a government body that is responsible for establishing and implementing a variety of national policies including taxation, finance, national treasury, foreign exchange regulations, etc. In fact, the NTS is an agency under the MOFE.) The MOFE ruled that the payments are Korean source royalties under the CITA and the Treaty, even if the underlying rights are not patented in Korea. (Kookjo 46017-6 (January 20, 1993).) There are administrative rulings issued by the NTS to the same effect as well. (Kookup 46017-254 (May 31, 2000); Kookil 46017-684 (November 7, 1997); Kookyi 46523-148 (April 7, 1993).) Accordingly, in practice, the MOFE and NTS have required Korean residents making royalty payments to foreign companies to withhold taxes from the payments regardless of whether or not the underlying rights are patented in Korea.

Consequently, pursuant to the aforementioned rulings, Samsung and Hynix were compelled to withhold taxes from the royalty payments made to Wang. Failure to do so would have subjected them to penalties and sanctions, discussed below.

(c) **Restrictions on Making Payments Overseas under Korean Foreign Exchange Regulations**

Not only were Samsung and Hynix compelled to withhold taxes on the royalty payments made to Wang in light of the administrative rulings issued by the MOFE and NTS, but also it was practically impossible for them to make the royalty payments to Wang without withholding taxes from them. The Guidelines on Management of Foreign Exchange Transactions issued by the Korea Federation of Banks (under the authority granted by the Regulation on Supervision of Foreign Exchange Transactions of the MOFE), which were in effect during the years in question, provided that when a Korean resident made a royalty payment to a non-resident, the resident payor should submit to a foreign exchange bank, along with other documents, a copy of the Certification of Taxes Paid on Due on Korean Source Income of Non-residents. Without such certificate, the foreign exchange bank simply would not remit the payment to the non-resident

5

recipient. The Certificate is essentially a receipt showing that the proper taxes have been duly withheld and paid, as required by the Korean tax laws. The Certificate is issued by the competent tax office to which the relevant withholding tax on the royalty payment is paid in case the payment is subject to withholding pursuant to, among others, Article 93(9) of the CITA.

Consequently, without such Certificate, Samsung and Hynix would not have been able to make the royalty payments to Wang. In other words, Samsung and Hynix would have failed to make the payments unless they withheld taxes from the payments and paid the taxes to the competent tax office. Therefore, Samsung and Hynix had no choice but to withhold taxes from the royalty payments to Wang, or they would have failed to make the payments resulting in a breach of the Agreements.

### (d)  Penalties and Sanctions on Failure to Withhold Taxes

Article 98(1) of the CITA (formerly, Article 59(1) of the CITA) requires a Korean resident making royalty payments to a foreign company to withhold relevant taxes from the payments and to pay the taxes to the competent tax office by the 10th day of the month immediately following the month in which the payments are made. Furthermore, Article 98(3) of the CITA (formerly, Article 59(3) of the CITA) provides that if the Korean resident fails to do so, the taxes plus a late-payment penalty would be imposed on the Korean resident (i.e., the withholding agent), instead. Accordingly, if Samsung and Hynix had failed to withhold and pay the taxes on the royalty payments made to Wang, the taxes plus a penalty would have been imposed on each of them.

The consequences of the failure to withhold and pay the relevant taxes do not end there. Under Article 11 of the Punishment of Tax Evaders Act, where a person required to withhold and pay taxes fails to do so without any justifiable reason, the person, in certain cases, may be sentenced to imprisonment of one year or less, or to a criminal fine in the amount equivalent to the amounts which should have been withheld and paid. Therefore, if they did not withhold and pay taxes on the royalty payments made to Wang, Samsung and Hynix not only would have been subject to monetary risks but also may have been subject to criminal sanctions.

### (e)  CAP

A CAP (a.k.a. a "mutual agreement procedure") is a negotiation between the tax authorities of two countries concerning taxes levied on a taxpayer's income or property. In case of Korea and the United States, such CAP is provided for under Article 27 of the Treaty.

The outcome of a CAP is not a binding judicial or administrative finding as to whether or not one country was correct in imposing taxes on the residents of another country. It is instead a political and diplomatic resolution reached in response to a request by a single affected taxpayer, which has no effect or significance beyond the particular issue that is resolved by the particular proceeding. In the case of the CAP initiated by Wang in 1996 and finally resolved in 2002, the outcome cannot be taken as a finding that Samsung or Hynix acted improperly in withholding taxes from the royalty payments they made to Wang or that the Korean tax authorities acted improperly in requiring Samsung or Hynix to withhold the taxes and in collecting such taxes. The outcome simply reflects an agreement by the Korean government to refund the taxes in this

particular instance and it neither reflected nor created any binding precedent. Therefore, withholding of taxes by Samsung and Hynix was in accordance with the administrative rulings of the Korean tax authorities discussed above.

## VI. CONCLUSION

Samsung and Hynix did not act improperly or illegally by withholding taxes from the royalty payments made to Wang pursuant to the Agreements in light of the practice of the Korean tax authorities, the foreign exchange regulations in effect during the years in question, and penalties and sanctions that may have been imposed on them, irrespective of the result of the CAP.

## VII. EXPERT QUALIFICATION

I am a partner at the law firm of Woo Yun Kang Jeong & Han in Seoul, Korea. Currently, I am a legal advisor to the Chungbu Regional Tax Office, appointed by the Head of the Tax Office, and a member the Taxation Quality Reform Committee of the NTS, appointed by the Commissioner of the NTS.

Previously, I was a member of the Advisory Board at the NTS Call Center. I was also a member of the Taxation Review Committee of the Samseong District Tax Office, International Fiscal Association, Tax Law Association, and International Bar Association, all appointive positions. I also lectured at the Seoul National University Law School as an adjunct professor.

# APPENDICES

## A. DOCUMENTS REVIEWED

Complaint filed by GetronicsWang Co., LLC in C.A. No. 04-12382RCL in the United States District Court for the District of Massachusetts

Licensing agreements entered into by GetronicsWang Co., LLC with Samsung Electronics Co., Ltd. and Hyundai Electronics Industries, Co., Ltd. and Goldstar Electronics Co., Ltd.

Articles 93(9), 98(1), 98(3) of the Korean Corporate Income Tax Act

Article 11 of the Korean Punishment of Tax Evaders Act

Articles 6(3), 27 of the Korea-U.S. Income Tax Treaty

Article 2(4) of the Guidelines on Management of Foreign Exchange Transactions, Korea Federation of Banks

<u>Hyundai Motor Co., Ltd. v. Chongro Tax Office</u>, 91 Nu 6887 (May 12, 1992)

Kookjo 46017-6 (January 20, 1993)

Kookup 46017-254 (May 31, 2000)

Kookil 46017-684 (November 7, 1997)

Kookyi 46523-148 (April 7, 1993)

Kim, Young Keun, Taxation of International Transactions, Saekyungsa, 327-328 (2003)

OECD Commentary on Article 12 of the Model Tax Convention on Income and on Capital, OECD Committee on Fiscal Affairs (January 2003)

Application for Certification of Taxes Paid on Due on Korean Source Income of Non-residents

## B. CURRICULUM VITAE

Name:       Kim, Dong Soo

Admitted:   Republic of Korea (1990)

Education:

> University of Florida, LL.M. in International Tax Studies (1998)
> Judicial Research and Training Institute, Supreme Court (1990)
> Seoul National University, Graduate School of Law, LL.M (1988)
> Seoul National University, LL.B. (1986)

8

Professional Experience:

    Partner, Woo Yun Kang Jeong & Han (1999 ~ Present)
    Associate, Woo Yun Kang Jeong & Han (1993 ~ 1999)
    Judge Advocate, Republic of Korea Army (1990 ~ 1993)

Member:    Korean Bar Association

Primary Practice Areas:

    Taxation; Litigation & Arbitration; Corporate (Mergers & Acquisitions)

C. **EXPERT WITNESS TESTIMONY**

    None.

Dated: Oct. 28, 2005                                  Dong Soo Kim