UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GETRONICSWANG CO., LLC, ) | |
| Plaintiff, ) | |
| v. ) | CIVIL ACTION NO. 04-12382(RCL) |
| HYNIX SEMICONDUCTOR, INC., ) SAMSUNG ELECTRONICS CO., LTD. ) | |
| Defendants ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, GetronicsWang Co., LLC ("Getronics"), through its attorneys, Sheehan Phinney Bass + Green, P.A., pursuant to Fed. R. Civ. P. 56 and L.R. 7.1 (B) (2), submits the following memorandum of law in opposition to Defendants' motion for summary judgment. A separate concise statement of material disputed facts has been filed herewith.

## INTRODUCTION

Defendants moved for summary judgment on three grounds: (1) that they were required by the Korean National Tax Service ("NTS") to withhold taxes from royalty payments due to Wang Laboratories ("Wang"), Getronics' predecessor; (2) some of Wang's claims are time-barred; and (3) it would be unfair to hold Defendants' liable for the fluctuation in currency exchange rate.[1]

---
[1] Plaintiff simultaneously moved for summary judgment.

Contrary to Defendants' contentions, the undisputed record establishes that Defendants breached their respective license agreements. This determination can be made without any reliance on Korean substantive law. Defendants attempt to excuse their breaches by citing to Korean law, but their application of Korean law to these facts is severely lacking. Even if Korean law is examined to evaluate Defendants' affirmative defenses, this Court will inevitably conclude that Defendants were not justified in withholding taxes from royalty payments. Plaintiff's claims are not time-barred, as Defendants contend, because Defendants partially paid their obligation in 2002-2003. The partial payments restart the limitations period because they constitute acknowledgments of their prior obligations. Finally, Defendants attempt to circumvent the express terms of the license agreements by appealing to equity. This Court cannot simply rewrite the parties' agreement. Moreover, Defendants' hands are not clean. Defendants, who were paying royalties for the use of Wang's patented technology, ignored Wang's directives <u>not</u> to withhold taxes. Defendants decided to use Wang's property – royalties due to Wang – in a manner that was contrary to applicable law. The competent authority proceeding confirmed that Defendants acted inappropriately. They cannot now appeal for fairness when they have harmed Getronics. As set forth more fully below, Defendants' motion for summary judgment should be denied.

## **ARGUMENT**

**I.     Defendants Breached Their License Agreements and Cannot Prove They Were Justified In Doing So.**

A.  <u>Defendants Bear the Burden of Proving Their Affirmative Defenses.</u>

As a preliminary matter, Defendants improperly attempt to shift to Getronics the burden of proving the impropriety of their withholding. As demonstrated in Getronics'

motion for summary judgment, Defendants breached the plain terms of the license agreements by failing to pay royalties as they accrued.  See Samsung Agreement § 2.03; Goldstar Agreement § 3.03; Hyundai Agreement § 5.3.[2]  Despite their payments in 2002-2003, Defendants concede that they still have failed to pay fully the royalties that accrued.  See Defs.' Concise Statement of Undisputed Fact ¶¶ 59-60 (conceding that the amounts repaid in 2002-2003 were less than the amounts withheld when the royalties accrued).  Proving Defendants breached the contract terms is accomplished independent of any reliance on Korean tax law.

Even if the burden of proving Defendants' liability under Korean substantive law fell to Getronics, Defendants are not entitled to summary judgment.  Defendants argue that the present record leads only to the conclusion that they were required by the NTS to withhold taxes from the royalty payments.  Defendants ignore the fact that Getronics' claims are bolstered by the opinion of Professor Chang Nam Ahn, professor of Tax Science at Kangnam University in Korea.[3]  See Exhibit DD to the Affidavit of Bruce S. Barnett in Support of Defendants' Motion for Summary Judgment ("Barnett Aff.").  In his opinion, Professor Ahn describes the Korean Supreme Court's decision in Hyundai Motor Co., Ltd. v. Chongro Tax Office, 91 Nu 6887 ("Hyundai Motor Co. Case").  The Korean Supreme Court determined that royalty payments by a Korean company for the use of another's U.S.-registered patent were not Korean source income and therefore not taxable under the Korean Corporate Tax.  Applying the Hyundai Motor Co. Case to the

---

[2] See, e.g., Samsung Agreement § 2.03 ("During the term of this Agreement, LICENSEE shall pay to WANG a running royalty of three percent (3%) of the Net Sales Value of all LICENSED SIMMs made, used or sold by LICENSEE in the United States on or after January 1, 1992.").  The license agreements are attached within Exhibits 1-2 of the Affidavit of James P. Harris, Esq., in support of Plaintiff's Motion for Summary Judgment.

[3] As explained supra, reliance on Korean substantive law is not essential to Getronics proving its claims.

facts of this case demonstrates that Defendants were not required by the NTS to withhold taxes. Indeed, the competent authority disposition, which was wholly consistent with the holding of the Hyundai Motor Co. Case, confirmed that Defendants were not required to withhold. As explained more fully below, Defendants fail to adequately counter the efficacy of the Hyundai Motor Co. Case. Therefore, even if Getronics bore the burden of proving improper withholding, Getronics would prevail.

Even if Professor Ahn's opinion failed to decisively establish a particular point of foreign law, it would not result in summary judgment for Defendants. Where the parties do not establish foreign law, the Court should merely presume that Korean law is substantively similar to Massachusetts law. See Compania Sud Americana de Vapores v. I.T.O. Corp. of Baltimore, 940 F. Supp. 855 (D. Md. 1996) (A litigant's failure to answer all questions on foreign law is usually not fatal to the litigant's case.); Riffe v. Magushi, 859 F. Supp. 220 (S.D. W. Va. 1994) (Where the presentation of foreign law is insufficiently precise, the court applies the forum's law.); Fed. R. Civ. P. 44.1. Contrary to Defendants' suggestion in the motion for summary judgment, the fact that an element of foreign law may be unresolved does not entitle Defendants to judgment as a matter of law.

Instead of denying that they breached the license agreements, Defendants attempt to excuse their breaches by arguing that they were compelled by the Korean tax authorities to withhold taxes from the royalty payments.[4] Under this defense, Defendants bear the burden of proving their breaches were justified. See Roger Williams Grocery Co. v. Sykes, 357 Mass. 485 (1970) (In a breach of contract action, the burden of proof was on the defendant to prove the affirmative defense of payment.); Chaplain v. Dugas,

---

[4] As shown below, even that assertion by Defendants is inaccurate.

4

323 Mass. 91 (1948) (Burden was on the defendant-employer to prove it was justified in discharging the employee.); Community Builders, Inc. v. Indian Motorcycle Assn., Inc., 44 Mass. App. Ct. 537, 692 N.E.2d 964 (1998) (Payment of amounts owed under a contract is an affirmative defense for which the defendant must bear the burden of proof.). To the extent their defenses rely upon foreign law, Defendants, not Getronics, bear the burden of establishing foreign law. Regardless of who bears the burden of proof, the undisputed record demonstrates that Defendants breached their license agreements and are responsible for all damages flowing from the breaches.

    B. <u>Defendants Breached Their License Agreements Whether Taxes Were Levied Or Not.</u>

Defendants cannot escape the undisputed fact that the competent authority proceeding resulted in a 100% refund of the taxes withheld by Defendants. The fact that the NTS refunded 100% of the Won it received is the clearest evidence that the taxes were not levied in the first place.[5] The NTS agreed that "all amounts due to Wang under the licensing agreements are sourced in the United States." <u>See</u> Oct. 16, 2002 letter from IRS to Wang, attached as Exhibit Z to Barnett Aff. In describing the competent authority proceeding, The IRS informed Wang that it had "won its [sic] claim that the withholding tax should not have been withheld and given over to the Korean Government." <u>See</u> Nov. 26, 2002 letter from the IRS to Wang, attached as Exhibit 3 to the Affidavit of James P. Harris in support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Second Harris Aff."). Therefore, Defendants withheld taxes that had not

---

[5] Around the time of Defendants' withholdings, the United States and Korea were already engaged in other competent authority proceedings. In those proceedings, a compromise of splitting the taxes 50-50 between the United States and Korea was considered. In this case, the competent authority proceeding resulted in a 100% refund. <u>See</u> July 28, 1992 letter from Kim & Chang to Wang, attached as Exhibit V to the Affidavit of Bruce S. Barnett ("Barnett Aff.") in support of Defendants' Motion for Summary Judgment.

been levied or were not consistent with the U.S.–Korea Tax Treaty, breaching the express terms of the license agreements. See Samsung Agreement §6.07; Goldstar Agreement §7.07; Hyundai Agreement §6.10. Because the taxes were not due at the time of the withholding, Defendants also breached the requirements of the license agreements to pay royalties as they accrued.[6] The fact that the NTS refunded fully the amounts withheld undercuts Defendants' argument that they were justified in paying taxes to the NTS. Defendants cannot therefore prevail on their affirmative defense of justification.

Even if Defendants are correct that Korean taxes were <u>levied</u> for a period of time, they were not levied permanently. Even under Defendants' strained interpretation of the record, the NTS ultimately reversed itself and conceded that no taxes were due. Nevertheless, Defendants failed to repay the full amounts they withheld, resulting in the "Exchange Rate Claim."

C. <u>Defendants Fail to Demonstrate That They Were Compelled to Withhold Taxes</u>.

Defendants have failed to carry their burden of proof with respect to their affirmative defense because Defendants fail to properly apply Korean substantive law to the facts of this case. Defendants argue that they were compelled by the Korean tax authorities to withhold corporate tax from the royalty payments. They rely upon the report of Dong Soo Kim to make this argument. See Exhibit F to Barnett Aff. (hereinafter "Kim Report"). Like the dog that didn't bark in the night, the Kim Report is striking for what it <u>does</u> <u>not</u> <u>say</u> and for the careful language employed to couch the opinion. Notably, the parties agree that the subject technology was registered under a

---

[6]As explained more fully in Plaintiff's motion for summary judgment, Plaintiff is entitled to interest that accrued from the time Defendants withheld sums from the accrued royalties until they made partial payment in 2002-2003. Plaintiffs are also entitled to the difference between the amounts withheld and the amounts paid in 2002-2003 (the "Exchange Rate Claim), plus accrued interest since 2002-2003.

6

U.S. patent held by Wang. See Plaintifff's Concise Statement of Undisputed Fact ¶ 1 filed in support of its motion for summary judgment; Defendants' Concise Statement of Undisputed Fact ¶¶ 1, 4 ("Pl's. Concise State. Fact"). The parties also agree that Defendants manufactured Wang's patented technology and sold those products in the United States. Defs.' Concise Statement of Undisputed Fact ¶ 4. These crucial facts are ignored by the Kim Report, however.

Prior to Defendants' withholding of taxes, the Korean Supreme Court decided the Hyundai Motor Co. Case and determined that royalty payments by a Korean company for the use of another's U.S. patent were not Korean source income and therefore not taxable under the Korean Corporate Tax. See Kim Report at 5. Defendants gloss over the actual holding of the Hyundai Motor Co. Case, but, in the context of Defendants' defense, it is worth examining more closely. In the Hyundai Motor Co. Case, a regional tax office took the position that because a Korean company manufactured goods in Korea, the royalties paid were Korean source income, even though the royalties were paid for the right to use a U.S. patent. See Expert Report of ChangNam Ahn, Exhibit DD to Barnett Aff. (hereinafter "Ahn Report"). The Korean Supreme Court disagreed with the regional tax office, however. The Korean Supreme Court, interpreting the Korean Corporation Tax Act and the U.S.-Korean tax treaty, began with the principle that a patent is a grant from a sovereign state. Id. at §III. A license agreement to use that patent implicates the foreign sovereign's grant. In the Hyundai Motor Co. Case, the patent was registered in the United States and not in Korea. See id. According to the Korean Supreme Court, royalties paid for the right to use the foreign patent were income only in the state in which the patent was registered. Id. Even though the Korean company in the Hyundai

7

Motor Co. Case manufactured goods in Korea, doing so implicated the U.S. patent. As such, the income was not Korean sourced. Id. Similar to the Hyundai Motor Co. Case, these Defendants "used" a U.S. patent and sold products in the United States. Defendants' royalty payments were, therefore, not Korean sourced income and should not have been withheld by Defendants.

Instead of dealing with the Hyundai Motor Co. Case, Defendants try to create ambiguity by referring to several administrative rulings, some of which were decided after Defendants withheld taxes from the royalties. Defendants do not expressly contend that the administrative rulings overrule the holding of the Hyundai Motor Co. Case.[7] Defendants' expert does not expressly opine that royalties accruing on U.S. patented products were Korean sourced income, presumably because such an explicit statement would contradict the Korean Supreme Court's decision. Mr. Kim's opinion avoids where Wang's patent was registered, focusing instead on where the products were manufactured, which is not the test espoused in the Hyundai Motor Co. Case.[8] The opinion therefore avoids the undisputed facts of this case and does not carry the persuasive force Defendants hoped it would.

Mr. Kim carefully chooses his words when describing Defendants' obligations under Korean banking regulations. The Kim Report states that a Korean resident making a royalty payment to a non-resident "should" submit a tax certificate to the foreign

---

[7] In the absence of proof as to foreign law, this Court is to presume that foreign law is substantively similar to Massachusetts law. See Gehling v. St. George University Sch. of Med., Ltd., 698 F. Supp. 419 (E.D.N.Y. 1988). In the United States, the decisions of judicial courts are more authoritative than conflicting revenue rulings from the IRS. See White v. U.S., 881 F. Supp. 688 (D. Mass. 1995) (IRS revenue rulings are not binding on this Courts.); New Terminal Stevedoring, Inc. v. M/V Belnor, 728 F. Supp. 62 (D. Mass. 1989) (same). Therefore, this Court can presume that the administrative rulings of cited by Mr. Kim do not overrule the Korean Supreme Court's decision in the Hyundai Motor Co. Case.

[8] Mr. Kim also assumes that Defendants were acting as "withholding agents," which is a faulty assumption on these facts. See Kim Report at 4; see Pl's. Concise State. Fact ¶7 (quoting sections of license agreements which state that licensees are not agents of Wang).

8

exchange bank.  See Kim Report at 5.[9]  The Kim Report states that it is "practically impossible" to make royalty payments without withholding taxes.  Id.  The couched opinion hardly permits this Court to determine as a matter of law that Defendants were compelled by Korean banking regulations to withhold taxes.

Defendants make much of the fact that the NTS declined to expressly waive the corporate tax in light of the Hyundai Motor Co. Case.  This refusal, however, had nothing to do with the merits.  Wang's Korean law firm, Kim & Chang, informed Wang at the time that the NTS was unwilling to take a formal position regarding the Hyundai Motor Co. Case because several other competent authority proceedings involving similar issues were pending at the time.  See Exhibit V to Barnett Aff.[10]  The NTS was understandably reluctant to go on the record espousing a position that would have undercut its pending negotiations and led to no tax revenue for the Korean government.  Therefore, the fact that the NTS did not respond to requests for clarification should not be taken as persuasive evidence as to the substance of Korean tax law.

Defendants also attempt to downplay the significance of the competent authority determination.  Notably, the competent authority determination in this case is wholly consistent with the holding in the Hyundai Motor Co. Case.  The consistency brings full circle the notion that Defendants should not have withheld taxes in the first place. Despite the fact that Defendants characterize the disposition as the product of a political

---

[9] Note that the Application for Certification of Tax Paid (or Due) on Korean Source Income of Nonresidents provided Defendants with an opportunity to claim that the payments were exempt from Korean taxes.  See, e.g., Exhibit K to Barnett Aff. Instead, Defendants simply concluded that taxes were due.

[10] "There are several pending issues which share the same controversial point as the present Wang case. With respect to these issues, the NTA and Internal Revenue Service of the U.S. have been engaged in the competent authority consultation as stipulated in Article 27 of the Treaty. . . . Because of this situation, the NTA is concerned that its issuance of an official ruling supporting the Supreme Court judgment will jeopardize its position with respect to the competent authority consultation with the IRS."

9

process, the fact it resulted in a 100% refund, as opposed to a 50-50% split, for example, indicates that the question of whether taxes should have been paid was not a close call.[11] Moreover, competent authority determinations are not merely negotiation sessions that parties in the contracting states are free to ignore. Both the United States and Korea affirmatively pledged to employ their powers to implement the treaty and competent authority determinations. See Tax Convention With the Republic of Korea, June 4, 1976, Art. 30 attached as Exhibit 2 to Second Harris Aff.[12]; see also Nov. 26, 2002 letter from IRS to Wang, Exhibit 3 to Second Harris Aff. (requiring Wang correct its tax returns based on the result of the competent authority proceeding.). While Defendants characterize the competent authority disposition as non-judicial, neither Wang nor Defendants were free to disregard it. It is simply inaccurate for Defendants to suggest that the competent authority determination was not binding.

    D.   Defendants Were Not "Withholding Agents" And Were Not Required to Withhold.

Finally, Defendants state that the license agreements themselves required withholding of taxes. This is only accurate in certain situations. The license agreements required Defendants to withhold taxes levied or, in the case of the Hyundai Agreement, to withhold taxes consistent with the U.S.-Korean Treaty on double taxation. See Samsung Agreement §6.07; Goldstar Agreement §7.07; Hyundai Agreement §6.10. The plain

---

[11] Around the time of Defendants' withholdings, the United States and Korea were already engaged in other competent authority proceedings. In those proceedings, a compromise of splitting the taxes 50-50 between the United States and Korea was considered. In this case, the competent authority proceeding resulted in a 100% refund. See July 28, 1992 letter from Kim & Chang to Wang, attached as Exhibit V to the Affidavit of Bruce S. Barnett ("Barnett Aff.") in support of Defendants' Motion for Summary Judgment.

[12] Art. 30: "(1) Each of the Contracting States shall endeavor to collect on behalf of the other Contracting State such taxes imposed by that other Contracting State as will ensure that any exemption or reduced rate of tax granted under this Convention by that other Contracting State shall not be enjoyed by persons not entitled to such benefits."

terms of the license agreements did not provide Defendants free reign to withhold hundreds of thousands of dollars from the aggregate royalties that were otherwise due to Wang. As explained above, and in Plaintiff's motion for summary judgment, taxes were not levied by the NTS, as evidenced by the result of the competent authority proceeding. Defendants overstate the plain meaning of the license agreements in an effort to avoid the undisputed facts.

Defendants also state in their motion for summary judgment that Wang conceded that Defendants were acting as its withholding agents. Defendants' argument contravenes the express language of the license agreements, which state that Defendants are not agents of Wang:

> WANG and LICENSEE agree and stipulate that LICENSEE shall not be construed as acting as an agent or representative of WANG in any dealings which LICENSEE may have with any other person, firm, or corporation and that LICENSEE has no power to act for or legally bind WANG in any transaction.

Samsung Agreement § 6.02 Goldstar Agreement § 7.02 (same); Hyundai Agreement § 10.2 (same, except reciprocal). Further, Anthony Paolillo, Director of North American Taxes at Getronics, flatly rejected the assertion that Defendants were acting as general withholding agents:

> Q. [By Mr. Sherman] You would agree with me that Wang was the real party in interest on this issue, correct?
>
> A. [By Mr. Paolillo] I'm not sure what –
>
> Q. What I mean is –
>
> A. I –
>
> Q. Samsung was only a withholding agent for Wang with respect to these taxes which were being withheld.

> A. I disagree with that statement.
>
> Q. Okay. In what way?
>
> A. Well, that Wang's position was that the tax should not have been withheld and that the – Wang's only interest was to recoup the royalty payments and that the real party of interest here became Samsung – Samsung because they're the ones that decided to withhold this piece.

Depo. Tr. Anthony Paolillo. at 84-85, attached as Exhibit 4 to Second Harris Aff. Paolillo went on to say that Samsung (and the other Defendants) were withholding agents <u>only</u> if taxes should have been withheld. <u>Id</u>. at 85. In fact, the competent authority proceeding established conclusively that taxes should <u>not</u> have been withheld. Defendants' attempt to characterize themselves as withholding agents simply contradicts the undisputed record. Defendants cannot establish they were justified in withholding a percentage of the royalties and/or failing to repay the amounts withheld. Therefore, Defendants' motion for summary judgment must be denied.

## II. Plaintiff's Claims Are Not Barred By The Statute of Limitations.

Defendants contend that several of Plaintiff's claims are barred by the six-year statute of limitations, although they apparently concede that Plaintiff's Exchange Rate Claims are not time-barred. Defendants ignore the established legal principle that a defendant's subsequent partial payment restarts the limitations period. In <u>Abele v. Dietz</u>, 312 Mass. 685, 687 (1942), for example, that court held that a partial payment constitutes a contemporaneous acknowledgement of the prior debt: "The reason a partial payment tolls the statute [of limitations] is that such payment is an acknowledgement of an existing indebtedness and raises an implied promise to pay the balance." Similarly, this Court, in <u>Deitrick v. Fenderson</u>, 27 F.Supp. 469 (D. Mass. 1939), construed

Massachusetts law to hold that partial payment of a debt restarts the limitations period: "A part payment on an obligation, whether of principal or interest, ordinarily has the effect of taking the case out of the statute of limitations. According to Massachusetts law, which here controls, the reason a part payment ordinarily tolls the statute of limitations is that it constitutes an acknowledgement of the whole debt, from which the law implies a promise to pay it." In this case, Defendants only partially repaid the outstanding royalties in 2002-2003. While Defendants may contest the total amounts currently due, they acknowledged in 2002-2003 that royalties were due. Their acknowledgement of the obligation restarts the limitations period. Plaintiff's claim was therefore properly filed within the six-year statute of limitations. On this basis, Defendants' motion for summary judgment should be denied.

### III. Defendants Bore the Risk Of All Damages Flowing As A Result of Their Breaches.

Finally, Defendants argue that it would be unfair to hold them responsible for the currency fluctuation that occurred from the time of their withholding until the NTS refund. They contend that the damages to Getronics were the result of occurrences beyond Defendants' control, even though Defendants decided to withhold taxes from the royalties that were due.[13] Defendants also characterize the license agreements as silent as to allocating the risk of such fluctuation, even though the license agreements very plainly establish the currency rate applicable to the royalty payments:

> All sums payable to Wang pursuant to this Agreement shall be paid in United States Dollars. In the event royalties accrue in a currency other than United States Dollars, those royalties shall be converted to United States Dollars at the rate for which United States Dollars were publicly traded in

---

[13] Indeed, Samsung and Goldstar ignored express directives from Wang not to withhold taxes. See Pls' Concise State. Fact ¶20.

>exchange for the other currency by the Korea Foreign
>Exchange Bank, on the last day of the Semi-Annual Period
>during which the royalties accrued.

Samsung Agreement §2.11; see also Goldstar Agreement §3.09 (same); Hyundai Agreement §6.4.[14] Defendants do not claim this language is ambiguous and do not adequately explain why this language should be ignored.

Defendants also prod this Court to imply terms into the license agreements. Doing so in this case would be inappropriate because the license agreements unambiguously prescribe the currency rate to be applied. See Epstein, Becker & Green, P.C. v. Atlas Venture, 62 Mass. App. Ct. 1103 (2004) (refusing to imply terms into a contract and distinguishing President and Fellows of Harvard College v. PECO Elec. Co., 57 Mass. App. Ct. 888 (2003)) (unpublished). These sophisticated parties provided a mechanism for determining currency conversion rates. Defendants calculated the full royalties that accrued, using the currency rate in the license agreements, so there can be no dispute that the percentages withheld were otherwise "due" to Wang. Defendants applied the rate in effect in 2002-2003 at the time of the refund and contravened the express language of the license agreements, which required applying the currency risk applicable when the royalties accrued. The Court need not, and indeed cannot, create a new agreement for these parties, and the Court should effectuate the plain terms of the license agreements. Cofman v. Acton Corp., 958 F.2d 494, 497 (1st Cir. 1992) ("It is true

---

[14] Hyundai Agreement §6.4: "LICENSEE shall pay all royalties and other payments due hereunder in United States Dollars. All royalties for an accounting period or other payments computed in other currencies shall be converted into United States Dollars at the exchange rate for bank transfers for such currency to United States Dollars as quoted by the head office of the Korean Foreign Exchange Bank at the close of banking on the day preceding the Effective Date of the Agreement for the payments required by Section 5.1 and 5.2 and on the last day of such accounting period (or the first business day thereafter if such last day shall be a non-business day) for the royalty payments required by Section 5.3."

that contracts cannot be rewritten simply to rescue a firm from a sinkhole of its own design.") (quotation omitted).

Defendants repeat several times that they did not benefit from the withholding. The fact is, Defendants did benefit from selling products made using Wang's patented technologies. It is worth noting that the license agreements required Defendants to pay royalties, which were a mere percentage of the profits generated by Defendants from their sales of Wang's patented technology. It is not as if Defendants were forced to pay these royalties from funds generated out of whole cloth. While Defendants may not have benefited directly from the withholding, Wang and Getronics were actually harmed by Defendants' conduct. Wang and Getronics were entitled to collect full royalties, but have yet to collect. Even if Defendants faced a 10% penalty from the NTS[15], they chose to pay 100% of the taxes (100% of Wang's money) to the NTS. Defendant ignored Wang's directions and gave away 100% of the amounts withheld when only a 10% penalty was arguably at stake. As explained more fully in Plaintiff's motion for summary judgment, all commercial contracts allocate risks of market fluctuations. Buyers take the risk that prices will decrease over time, for example. It would not be inequitable for Defendants to bear the risk of currency fluctuation, particularly where Defendants created the risk in the first place. Under a complete view of the circumstances, it is clear that Defendants' fairness argument fails, and Defendants' motion for summary judgment must therefore be denied.

---

[15] There is no evidence to suggest that Defendants sought indemnification from Wang for the 10% penalty. Defendants' expert conceded that a Korean taxpayer with a justifiable reason would not face penalties. See Exhibit F to Barnett Aff. Certainly the Hyundai Motor Co. Case provided Defendants with sufficient justification to avoid penalties from the NTS.

## Conclusion

For the reasons stated above, Defendants have not met their burden to warrant judgment as a matter of law. Defendants' motion for summary judgment should therefore be denied.

Respectfully submitted,

GETRONICSWANG CO., LLC

By its attorneys,

SHEEHAN PHINNEY BASS + GREEN, PA

Date:  February 3, 2006  /s/ Michael C. Harvell
Michael C. Harvell (Pro Hac Vice)
One Boston Place, 38th Floor
Boston, MA 02108
(617) 897-5600

Date: February 3, 2006  /s/ Maria Recalde
Maria Recalde, (BBO# 552831)
One Boston Place, 38th Floor
Boston, MA 02108
(617) 897-5600

## CERTIFICATE OF SERVICE

I, Maria E. Recalde, hereby certify that the foregoing Opposition to Defendants' Motion for Summary Judgment was served on Robert P. Sherman, Esq., DLA Piper Rudnick Gray Cary LLP, One International Place, Boston, Massachusetts 02110, robert.sherman@dlapiper.com through Electronic Case Filing, this 3rd day of February, 2006.

/s/ Maria E. Recalde
Maria E. Recalde

g:\jharris\getronics (harvell)\opp. defs msj.doc