**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GETRONICSWANG CO., LLC,<br>         Plaintiff,<br><br>v.<br><br>HYNIX SEMICONDUCTOR, INC., and<br>SAMSUNG ELECTRONICS CO., LTD.,<br>         Defendants. | Civil Action No. 04-12382 (RCL) |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S CONCISE
STATEMENT OF MATERIAL UNDISPUTED FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

The defendants submit the following response to plaintiff's concise statement of material undisputed facts.  A separate memorandum of law in opposition to plaintiff's motion for summary judgment has been filed herewith.

1.      *In 1991, Wang Laboratories ("Wang"), predecessor to Plaintiff Getronics, successfully enforced a series of United States patents for SIMMs, memory modules used in personal computers.  Wang's success led to a series of licensing agreements with actual and potential SIMM manufacturers.  Among others, Wang negotiated for license agreements with Samsung Electronics Co., Ltd. ("Samsung"); Goldstar Electron Co., Ltd. ("Goldstar"); and Hyundai Electronics Industries Co., Ltd. ("Hyundai").  Hyundai later changed its name to Hynix Semiconductor, Inc. ("Hynix"), Defendant herein.  Hynix subsequently acquired Goldstar.  See Def. Samsung's Answer ¶ 6; Def. Hynix's Answer ¶¶5-6.*

**RESPONSE 1**:  Undisputed.

2.      *True and accurate copies of the license agreements are attached as Exhibit 1 to Def. Samsung's Responses to Pl's. Requests for Admissions ("Samsung Agreement"), Exhibit 1 to Def. Hynix's Responses to Pl's. Requests for Admissions ("Goldstar*

*Agreement"), and Exhibit 2 to Def. Hynix's Responses to Pl's. Requests for Admissions ("Hyundai Agreement"). Defendants' respective responses to Plaintiff's Requests for Admissions are attached as Exhibits 1-2 to the Affidavit of James P. Harris, Esq. ("Harris Aff."), filed herewith.*

**RESPONSE 2**: Undisputed.


3.	Each license agreement provided that it was governed by Massachusetts law. Samsung Agreement §6.03; Goldstar Agreement §7.03; Hyundai Agreement §10.3.

**RESPONSE 3**: Undisputed.


4.	Each license agreement contemplated royalty payments based principally on a percentage of the sales revenues. Samsung Agreement §§2.02 and 2.03; Goldstar Agreement §§8.02(iii) and 3.03; Hyundai Agreement §§1.5 and 5.3.

**RESPONSE 4**: Undisputed.


5.	Royalty payments were to be made in U.S. Dollars, and all monetary values in the agreements were stated in dollars. Samsung Agreement §2.11; Goldstar Agreement §3.09; Hyundai Agreement §6.4.

**RESPONSE 5**: It is undisputed that no currency other than U.S. Dollars was referred to in any of the Agreements. The text of Samsung Agreement §2.11, Goldstar Agreement §3.09, and Hyundai Agreement §6.4 is undisputed.


6.	Under the license agreements, royalties accruing in currencies other than U.S. Dollars were to be converted into U.S. Dollars at the rate in effect on the last day of the applicable accounting period in which the royalties accrued:

> *All sums payable to Wang pursuant to this Agreement shall be paid in United States Dollars. In the event royalties accrue in a currency other than United States Dollars, those royalties shall be converted to United States Dollars at the rate for which United States Dollars were publicly traded in exchange for the other currency by the Korea Foreign Exchange Bank, on the last day of the Semi—Annual Period during which the royalties accrued.*

*Samsung Agreement §2.11; see also Goldstar Agreement §3.09 (same); Hyundai Agreement §6.4.*[1]

**RESPONSE 6**: Undisputed.


7.     Each license agreement stated expressly that the licensees were not the agents of Wang:

> *WANG and LICENSEE agree and stipulate that LICENSEE shall not be construed as acting as an agent or representative of WANG in any dealings which LICENSEE may have with any other person, firm, or corporation and that LICENSEE has no power to act for or legally bind WANG in any transaction.*

*Samsung Agreement § 6.02;  Goldstar Agreement § 7.02 (same); Hyundai Agreement § 10.2 (same, except reciprocal).*

**RESPONSE 7**: The language of the respective provisions of Samsung Agreement § 6.02, Goldstar Agreement § 7.02, and Hyundai Agreement § 10.2 is undisputed.


8.     Each license agreement dealt with the withholding of taxes levied.  For example, the Hyundai Agreement provided:

> *All taxes imposed as a result of the existence or performance of this Agreement shall be borne and paid by the party required to do so by applicable law. LICENSEE shall withhold from payments to WANG under this Agreement the amount of any national taxes levied on LICENSEE's payments hereunder*

---

[1]    *Hyundai Agreement §6.4:  "LICENSEE shall pay all royalties and other payments due hereunder in United States Dollars.  All royalties for an accounting period or other payments computed in other currencies shall be converted into United States Dollars at the exchange rate for bank transfers for such currency to United States Dollars as quoted by the head office of the Korean Foreign Exchange Bank at the close of banking on the day preceding the Effective Date of the Agreement for the payments required by Section 5.1 and 5.2 and on the last day of such accounting period (or the first business day thereafter if such last day shall be a non—business day) for the royalty payments required by Section 5.3"*

3

> *by the Korean government consistent with any Korea/United*
> *States double taxation treaty.*

*Hyundai Agreement § 6.10.*

> **RESPONSE 8**:  The language of Hyundai Agreement § 6.10 is undisputed.

    9.    *Similarly, the Goldstar Agreement provided:*

> *All taxes imposed as a result of this agreement or the*
> *performance hereunder shall be paid by WANG if so required*
> *by applicable law.  LICENSEE shall withhold the amount of*
> *such taxes levied by the Government of Korea on the payment*
> *to be made from LICENSEE to WANG.*

*Goldstar Agreement §7.07.*

> **RESPONSE 9**:  The language of § 7.07 of the Goldstar Agreement is undisputed.

    10.    *Finally, on the issue of taxes, the Samsung Agreement provided:*

> *All taxes imposed as a result of the existence of this agreement*
> *or the performance hereunder shall be paid by WANG if so*
> *required by applicable law.  LICENSEE shall withhold the*
> *amount of such taxes levied by the Government of Korea on*
> *the payment made by LICENSEE to WANG.*

*Samsung Agreement §6.07.*

> **RESPONSE 10**:  The language of § 6.07 of the Samsung Agreement is undisputed.

    11.    *Each license agreement stated that interest accrues on late payments.  Interest accrues under the Samsung and Goldstar Agreements at 1%.  See Samsung Agreement §2.12; Goldstar Agreement § 3.10. Interest on late payments accrues at 1.5% under the Hyundai Agreement.  See Hyundai Agreement § 6.9.*

> **RESPONSE 11**:  Undisputed.

4

12.  *The license agreements also provided that should Wang commence legal action to collect amounts due under the agreements or enforce the agreements, Wang would be entitled to recover from the licensees the costs and attorneys' fees incurred.  See Samsung Agreement § 6.05; Hyundai Agreement § 10.4; Goldstar Agreement § 7.05.*

**RESPONSE 12**:  The language of Samsung Agreement § 6.05, Hyundai Agreement § 10.4, and Goldstar Agreement § 7.05 is undisputed.  The factual statement by plaintiff in paragraph 12, which is a characterization of the contractual language, is disputed.

13.  *On May 12, 1992, just before Defendants began making royalty payments, the Korean Supreme Court decided the case of Hyundai Motor Co., Ltd. v. Chongro Tax Office, 91 Nu 6887 ("Hyundai Motor Co. Case").  In that case, the Korean Supreme Court determined that royalty payments by a Korean company for the use of another's patents registered in the United States were not Korean source income and therefore not taxable under the Korean Corporate Tax.*

**RESPONSE 13**:  Plaintiff's statement of fact is without citation.  The defendants do not dispute that on May 12, 1992 the Korean Supreme Court decided the case of Hyundai Motor Co. Ltd. v. Chongro Tax Office, but dispute the plaintiff's description of the case, which is also without citation.  See Kim Report at 5 (Barnett Aff. Ex. F).

14.  *In June 1992, Samsung and Goldstar began making royalty payments to Wang.  See June 26, 1992 letter from Samsung to Wang, Exhibit 3 to Harris Aff.; June 5, 1992 letter from Goldstar to Wang, Exhibit 4 to Harris Aff..*

**RESPONSE 14**:  Undisputed, except that Goldstar began making royalty payments on May 29, 1992.  See Harris Aff. Exhibit 3; Barnett Aff. Ex. J.

15.  *Royalties accrued in the amounts of $6,206,482 (US) for Samsung and $5,382,784 (US) for Goldstar respectively.  Affidavit of Anthony Paolillo ("Paolillo Aff.") ¶¶ 3,11.*

**RESPONSE 15**:  Undisputed.

5

16. *Hyundai began making royalty payments to Wang in August 1993. See August 26, 1993 letter from Hyundai to Wang, Exhibit 5 to Harris Aff.*

**RESPONSE 16**:  Undisputed.


17. *Royalties accrued in the amount of $803,987 for Hyundai. Paolillo Aff. ¶ 19.*

**RESPONSE 17**:  Undisputed.


18. *In making these royalty payments, each Defendant applied the currency rate called for in its respective license agreement; that is, each Defendant converted royalties accruing in foreign currency to U.S. dollars using the currency rate applicable on the last day of the accounting period during which the royalty accrued. Paolillo Aff. ¶¶ 4, 12, 20; June 20, 1992 letter from Samsung to Wang, Exhibit 6 to Harris Aff.; January 14, 2002 letter from Hynix to Getronics, Exhibit 7 to Harris Aff..*

**RESPONSE 18**:  Undisputed.


19. *In making their respective royalty payments, Defendants informed Wang that they would deduct a portion of the royalty payments (16.25%) to pay the Korean Corporation Tax. See June 26, 1992 letter from Samsung to Wang, Exhibit 3 to Harris Aff.; June 5, 1992 letter from Goldstar to Wang, Exhibit 4 to Harris Aff.; August 26, 1993 letter from Hyundai to Wang, Exhibit 5 to Harris Aff..*

**RESPONSE 19**:  Undisputed, except that the percentage of the gross royalty amounts which was withheld to pay Korean corporation tax and inhabitant surtax was 16.125% through 1995 and 16.5% thereafter.  See Min Aff. ¶ 5.


20. *Wang protested the deductions, informing Samsung and Goldstar that the royalties were not Korean source income in part because they were not derived from patents registered or used in Korea. Wang therefore informed Samsung and Goldstar that the royalties were not subject to the Korean Corporation Tax. Wang brought to Samsung's and Goldstar's attention the holding of the Korean Supreme Court in the recent Hyundai Motor Co. case. See June 16, 1992 letter from Wang to Samsung and Def. Samsung's Responses to P1's. Requests for Admission No. 2 (authenticating the letter and acknowledging receipt), Exhibit 1 to Harris Aff.; June 16, 1992 letter from Wang to Goldstar and Def. Hynix's*

6

*Responses to Pl's. Requests for Admission No. 3 (authenticating the letter and acknowledging receipt), Exhibit 2 to Harris Aff..*

**RESPONSE 20**: The authenticity of the letters referred to in paragraph 20 is undisputed as are the facts that the letters referred to the Hyundai Motor Co. case and asked the defendants not to withhold. The defendants dispute the premise of sentences 1 and 2 of paragraph 20 — that the royalties under the Agreements were not sourced in Korea and not subject to Korean taxation — as legal conclusions not supported by competent evidence. See also Kim Report at 5 (Barnett Aff. Ex. F).

21. *The Hyundai Agreement, entered into fifteen months after the Samsung and Goldstar Agreements (and one year after the Hyundai Motor Co. case), permitted Hyundai to withhold taxes only to the extent doing so was consistent with the U.S. — Korea tax treaty. Hyundai Agreement § 6.10.*

**RESPONSE 21**: The substance of § 6.10 of the Hyundai Agreement is undisputed.

22. *All three Defendants deducted Korean Corporate Tax from their respective royalty payments, converted the withheld amount to Korean Won, and paid the Won to the Korean National Tax Service ("NTS"). Paolillo Aff. ¶¶ 5, 13, 21; Def. Samsung's Response to Pl's. Requests for Admission No. 6, Exhibit 1 to Harris Aff.; Def. Hynix's Responses to Pl's. Requests for Admission Nos. 10-11, Exhibit 2 to Harris Aff.*

**RESPONSE 22**: Undisputed.

23. *In the aggregate, the Defendants withheld the following amounts from the full royalties that accrued: $1,000,792 (US) (Samsung); $723,578 (US) (Goldstar); and $129,643 (US) (Hyundai). Paolillo Aff. ¶¶ 5, 13, 21.*

**RESPONSE 23**: Undisputed.

7

24.     *Wang subsequently initiated a Competent Authority Proceeding with the U.S. Department of Treasury.[2]  See July 24, 1996 letter from Wang to IRS, Exhibit 8 to Harris Aff..*

**RESPONSE 24**:  The statement in the text is undisputed.  The description in the first sentence of the footnote is unsupported by any evidence and disputed by Defendants to the extent it suggests that a Competent Authority Proceeding determines whether one nation properly or improperly assessed taxes.  See Defendants' Facts ¶¶ 27, 28, 54.

25.     *In 1999, Getronics acquired Wang. Paolillo Aff. ¶ 1.*

**RESPONSE 25**:  Undisputed.

26.     *In Fall 2002, the Competent Authority Proceeding concluded that the royalties were based on American source sales, and therefore, not taxable by Korea. Internal Revenue Service Director of International Business Carol A. Dunahoo, reported the determination of the competent authorities:*

> ***Determination and Disposition.*** *We have reached mutual agreement with the Korean National Tax Service (NTS) regarding the treatment of royalties paid to Wang from 1992 to present. The NTS has agreed that none of the royalties will be considered as Korean sourced. Accordingly, the NTS will refund all of the withholding to the Korean withholding agents. It will be the responsibility of Wang to determine and collect these refunds from the withholding agents.*

*October 16, 2002 letter from IRS to Wang, Exhibit 10 to Harris Aff.*

---

[2]  *A Competent Authority Proceeding is an administrative procedure whereby the taxing authorities of two (or more) countries which may potentially tax the same taxable property, determine which of the two (or more) is the "competent authority" to levy the tax.  In this case, the basis for the proceeding stems from the Tax Treaty entered into between the United States and Korea.  See Tax Convention With the Republic of Korea, June 4, 1976, selected portions attached as Exhibit 9 to Harris Aff..  The professed goal of the treaty and competent authority proceeding is to avoid double taxation. Id. at Preamble ("The Government of the United States of America and the Government of the Republic of Korea, desiring to conclude a convention for the avoidance of double taxation of income and the prevention of fiscal evasion and the encouragement of international trade and investment . . . ."); id. at Art. 27 (describing the competent authority procedure).*

**RESPONSE 26**:   The quotation is undisputed, although it comes from an internal IRS memorandum, not a letter to Wang.  See Harris Exhibit 10.  The characterization of the outcome of the Competent Authority Proceeding is disputed (especially the suggestion that the proceeding determined whether taxes were properly levied in the first place) and is not supported by any evidence.  To resolve the diplomatic negotiation, the IRS and NTS agreed that the payments "will [not] be considered" Korean source income.  See Defendants' Facts ¶¶ 27, 28, 54.

27. *As a result of the Competent Authority Proceeding, the NTS refunded to Defendants the funds previously paid as taxes and withheld from the royalty payments.  The NTS refund was made to Defendants in Korean Won, the same currency in which the taxes were paid into the NTS.  See Def. Samsung's Answer ¶ 14; Def. Hynix's Answer ¶ 14.*

**RESPONSE 27**:  Undisputed.

28. *Defendants converted the NTS refund to U.S. Dollars based on the currency rate applicable on the date of the refund, as opposed to the rate applicable when the royalties accrued, and paid that amount to Getronics.  See Def. Samsung's Answer ¶ 15; See Def. Hynix' s Answer ¶ 15.*

**RESPONSE 28**:  Undisputed.

29. *The refund payments to Getronics were made in the following amounts: $808,360 (US) (Samsung); $482,366 (US) (Goldstar); and $93,724 (US) (Hyundai). Paolillo Aff. ¶¶ 6, 14, 22.*

**RESPONSE 29**:  Undisputed.

30.     *Despite Getronics' demands, Defendants refused to pay the difference between the amounts withheld when the royalties accrued (see ¶ 23, supra) and the amounts paid in 2002 and 2003 (see ¶ 29, supra) (hereinafter referred to as the "Exchange Rate Claim"). Paolillo Aff. ¶¶ 7, 15, 23.*

**RESPONSE 30**: The defendants dispute that they owe anything to Plaintiff and, therefore, dispute the characterization of the claim.

31.     *According to the interest provisions of the license agreements, see ¶ 11, supra, interest on the respective Exchange Rate Claims has accrued in the following amounts: $69,276 (US) (Samsung); $84,424 (US) (Goldstar); and $22,164 (US) (Hyundai). Paolillo Aff. ¶¶ 8, 16, 24.*

**RESPONSE 31**: This paragraph sets forth legal conclusions and not facts. The defendants dispute this claim.

32.     *According to the interest provisions of the license agreements, see ¶ 11, supra, interest on Defendants' late royalty payments has accrued in the following amounts: $1,209,684 (US) (Samsung); $802,178 (US) (Goldstar); and $219,562 (US) (Hyundai). Paolillo Aff. ¶¶ 9, 17, 25.*

**RESPONSE 32**: This paragraph sets forth legal conclusions and not facts. The defendants dispute this claim.

33.     *Despite Getronics' demands, Defendants have refused to pay interest on the Exchange Rate Claim and their late royalty payments. Paolillo Aff. ¶¶ 8, 10, 16, 18, 24, 26.*

**RESPONSE 33**: The defendants have not paid interest as no interest is due.

34.     *Getronics commenced this action on or about November 10, 2004, alleging two counts against each Defendant, breach of contract and breach of implied covenant of good faith and fair dealing. See Pl.'s Complaint.*

**RESPONSE 34**: Undisputed.

10

35.   *Getronics incurred costs and attorneys' fees in initiating the competent authority proceeding and prosecuting this litigation.[3]  Paolillo Aff. ¶¶ 27, 28.  Defendants have not paid these costs and attorneys' fees, despite demands from Getronics.  Id. ¶ 29.*

**RESPONSE 35**:  The defendants do not dispute that Wang has incurred costs and attorneys' fees in connection with the Competent Authority Proceeding and this litigation; they have not paid any such amounts because neither fees nor costs are due.

Respectfully submitted,

HYNIX SEMICONDUCTOR, INC.,
SAMSUNG ELECTRONICS CO.,
LTD.

By their attorneys,

       /s/ Robert P. Sherman       
Robert P. Sherman (BBO
Bruce S. Barnett (BBO
DLA PIPER RUDNICK GRAY CARY US LLP
One International Place, 21st Floor
100 Oliver Street
Boston, MA  02110-2613
(617) 406-6000 (*telephone*)
(617) 406-6100 (*fax*)

Dated:  February 3, 2006

---

[3]  *In the event the Court grants Plaintiff's motion for summary judgment and finds that Plaintiff is entitled to its costs and attorneys' fees under the license agreements, Plaintiff will file an appropriate affidavit setting forth the costs and attorneys' fees incurred at that time.*

11