UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GETRONICSWANG CO., LLC,<br>    Plaintiff,<br><br>v.<br><br>HYNIX SEMICONDUCTOR, INC., and<br>SAMSUNG ELECTRONICS CO., LTD.,<br>    Defendants. | Civil Action No. 04-12382 (RCL) |

**REPLY MEMORANDUM OF DEFENDANTS IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants Hynix Semiconductor, Inc. ("Hynix") and Samsung Electronics Co., Ltd. ("Samsung") submit this reply memorandum to make the following four points in response to plaintiff GetronicsWang Co., LLC's ("Wang's") opposition to their motion for summary judgment:

- The defendants' remittance of the tax refunds to Wang was not an acknowledgment of a debt and did not affect the the statute of limitations.

- The defendants have not conceded a breach that they seek to excuse by way of affirmative defense. Rather, the defendants' withholding of Korean tax payments constituted full performance of the License Agreements,[1] and it remains Wang's

---

[1] Capitalized terms not defined herein have the meaning given to them in the Defendants' Brief.

burden — an unfulfilled burden — to submit evidence of each element of its case, including that withholding was a breach.

- Wang has conceded that Paul Martineau of the Internal Revenue Service had no involvement with the Competent Authority Proceeding ("CAP") and thus the Court should disregard his letter purporting to characterize the CAP.

- Wang clouds the issues for decision in this case by presenting its view of the Hyundai Motor Co. case and arguing that it controls this case. That question is irrelevant in light of the undisputed evidence that Hyundai Motor Co. applied only to the parties to that case and that NTS required withholding notwithstanding the Hyundai Motor Co. decision.

## I. DEFENDANTS MADE NO PARTIAL PAYMENT ON AN EXISTING DEBT AND NOTHING TOLLED THE STATUTE OF LIMITATIONS.

Wang devotes less than a page to the statute of limitations defect that eliminates its claim, see Wang's Opp. 12-13,[2] despite bearing the burden of presenting facts that would take the case out of the statute of limitations. Wang's treatment of this issue is not merely cursory; it is inaccurate as it fails to provide the Court with a full picture of the partial-payment doctrine. "Depending upon the circumstances, a part payment may be an acknowledgement of a debt taking it out of the operation of the statute. … But to avoid the statute, the circumstances attending the part payment must support a fair and reasonable inference that the debtor intended to renew his promise of payment." Kelly v. McIntyre, 323 Mass. 313, 315 (1948) (declining to infer that continued weekly providing of room and board was perpetual acknowledgement of

---

[2] In this reply memorandum, Plaintiff's Opposition to Defendants' Motion for Summary Judgment [document 36] is referred to as "Wang's Opposition" and the Memorandum of Law in Support of Defendants' Motion for Summary Judgment [document 31] is referred to as "Defendants' Brief."

alleged debt for weekly cash wages).  See also DiCarlo v. Lattuca, 60 Mass. App. Ct. 344, 349-50 (2004) (rejecting claim that partnership distribution to widow of deceased partner was acknowledgement of time-barred obligation to make accounting where "the only evidence regarding the reason for [the] payment produces precisely the opposite inference") (citing Provident Inst. for Sav. v. Merrill, 311 Mass. 168, 171 (1942)).

Indeed, in both partial-payment cases cited by Wang, the courts rejected the tolling argument presented by the plaintiff.  See  Abele v. Dietz, 312 Mass 685, 687 (1942); Deitrick v. Fenderson, 27 F. Supp. 469, 472-73 (D. Mass. 1939) (finding that a defendant's return to a bank of its own money — rather than paying from his own funds — was not a "payment on the notes tantamount to an acknowledgment of the supposed debt").

To meet its burden of presenting facts to take its claim out of the statute of limitations, Wang must do more than simply contend that in 2002-2003 the defendants acknowledged a debt to pay royalties previously due.  See Wang's Opp. 13.  But Wang offers nothing more because it cannot.  Moreover, its portrayal of the facts surrounding the remittance of the tax refund is as incomplete as its description of partial-payment law.  In letters at the time of the refund, each defendant made clear that it was not making partial payments of an outstanding debt but rather was acting in its capacity as a withholding agent and returning to Wang the amount of the tax refund.  Each rejected Wang's claim that it was required to make up the difference between the Dollar value of the refund and the Dollar value of the withholding.

Hynix made clear from the start that it was remitting a tax refund, not making a partial payment on an outstanding debt.  In a letter of December 30, 2002, D.S. Chung noted that Wang would receive a lesser amount than it was expecting because of the exchange rates applied to the refund (not because Hynix was making only a partial payment on an acknowledged debt).

3

~BOST1:407877.v1

Mr. Chung also rejected Wang's claim for interest.  See Letter from D.S. Chung to Anthony Paolillo, Dec. 30, 2002 (Part of Exhibit A to Second Affidavit of Bruce S. Barnett in Support of Defendants' Motion for Summary Judgment ("Second Barnett Aff.")).   In subsequent letters, Mr. Chung reiterated that Hynix was returning the taxes as a withholding "conduit," stated that Hynix had paid its royalties at the time of the original 1992-1997 payments to Wang, expressly rejected the suggestion that remitting the refund was a "partial payment," and encouraged Wang to contact NTS if it sought more.  See Letters from D.S. Chung to Anthony Paolillo, Jan. 14, Jan. 18 & Feb. 5, 2003 (Part of Second Barnett Aff. Ex. A.)

     Samsung similarly made clear it was conveying to Wang a tax refund for which it had been a withholding agent, it was not responsible for interest or exchange rate issues not decided by the Competent Authority Proceeding, and Wang should contact the taxing authorities if it sought further relief.  Like Hynix, Samsung rejected Wang's characterization of the refund as a payment of royalties.  See Letter from Young-Sung Min to Anthony Paolillo, Dec. 31, 2002; Memorandum from Song Hyon Cho to Anthony Paolillo, Feb. 10, 2003 (Part of Second Barnett Aff. Ex. B).

     In sum, the only evidence concerning "the circumstances attending the part payment" negate rather than support "a fair and reasonable inference that the debtor intended to renew his promise of payment."  Kelly, 323 Mass. at 315.  Rather than acknowledge a still-existing prior debt, the Korean companies unequivocally maintained that they were acting as pass-throughs for the refund from NTS and that they owed no further royalty payments to Wang.  Accordingly, the statute of limitation applies in full force to Wang's claims and bars all claims premised on a breach of the agreement at the time of the royalty payments in 1992-1997.

~BOST1:407877.v1

## II. IMPROPER WITHHOLDING IS AN ELEMENT OF WANG'S CASE ON WHICH IT HAS FAILED TO CARRY ITS BURDEN AT SUMMARY JUDGMENT.

Much of Wang's opposition to the defendants' motion for summary judgment is premised on a fundamental misconstruction of the defendants' position. Because Wang cannot present the Court with evidence sufficient to sustain a finding in its favor on each element of its claims, it seeks to shift the burden to the defendants. Wang erroneously contends that Hynix and Samsung do not deny having breached the agreements but rather seek to excuse their breaches with an affirmative defense of justification. See, e.g., Wang's Opp. 4. To the contrary, the defendants have consistently maintained that they fully performed under the agreements and never breached. See, e.g., Defendants' Brief 1 ("Hynix and Samsung performed exactly as required by the licensing agreements.")[3]

While the defendants agree that from 1992 to 1997 they paid to Wang an amount equal to the gross royalty calculation less the tax withholding, doing so was not a breach because, under the Agreements, Wang was not due the gross royalty amount. Rather, the Korean companies were required to withhold taxes levied by the Korean government. See Taxes Provisions. Accordingly, to establish its case, Wang must prove that defendants violated the Taxes Provisions by withholding amounts not required by the Korean government. Otherwise, the defendants performed as required. Wang cannot escape the dispositive implications of its failure of proof by attempting to shift the burden to defendants.[4]

---

[3] Hynix and Samsung are willing to assume, *arguendo*, a breach at the time of the royalty payments in 1992 to 1997 to demonstrate that any claim based on such a breach is time-barred, but that is a far cry from refusing to deny they breached the agreements.

[4] Of course, because of the statute of limitations, it is equally dispositive in defendants' favor if Wang does succeed in establishing a breach for improper withholding at the time of the royalty payments.

### III. THE COMPETENT AUTHORITY PROCEEDING DID NOT DETERMINE WHETHER WITHHOLDING WAS PROPER & PAUL MARTINEAU'S LETTER DOES NOT PROVE OTHERWISE.

Wang seeks to prove that the Korean companies improperly withheld taxes by characterizing the result of the Competent Authority Proceeding as a concession by NTS that the taxes were not due at the time. This entire theory runs contrary to the undisputed evidence before the Court that the CAP is a negotiated proceeding that "is not a binding judicial or administrative finding as to whether or not one country was correct in imposing taxes." Kim Report § V(e) ([First] Barnett Aff. Ex. F.)

It is also unsupported in the evidence. Neither party was privy to, and neither party has presented evidence about, the negotiations and agreements between NTS and the IRS. Lacking direct evidence, Wang seeks to make do with select statements of the IRS concerning the CAP. Remarkably, Wang relies in this regard on a November 26, 2002, letter from IRS Revenue Agent Paul Martineau despite its concession at deposition that his statements "do not reflect what went on as part of the Competent Authority":

> Q. [by Mr. Sherman]  [Y]ou've acknowledged to me that he was not — Mr. Martineau was not involved in the Competent Authority proceeding, correct?
>
> A. [by Mr. Paolillo]    He was not.
>
> Q.     He didn't have responsibility for the Competent Authority proceeding?
>
> A.     Correct.
>
> Q.     And his only role was to verify the tax treatment in Wang's tax returns of the deductions that had been made?
>
> A.     Correct.
>
> Q.     Okay.

> A. That's it.
>
> Q. So you would agree with me that his own statements about what happened in the Competent Authority proceeding are not the – can't be relied upon?
>
> A. I would say that they do not reflect what went on as part of the Competent Authority.

Deposition of Anthony Paolillo at 139:17 to 140:11 (Second Barnett Aff. Ex. C.)

Beyond the statements in Mr. Martineau's letter (clearly incompetent evidence that is otherwise hearsay) and other statements by the IRS (indicating merely that NTS would "consider" the income as Korean-sourced for purposes of the Competent Authority Proceeding and the refund), Wang's only support for its argument that NTS agreed in the CAP that taxes were erroneously imposed is the fact that NTS agreed to refund 100% of the withholding. This, too, proves nothing.

In any event, even if NTS agreed in 2002 that it was wrong to impose the taxes previously, it does not mean NTS did not require the taxes when the royalty payments were made from 1992-1997. Indeed, on this point, the IRS correspondence in unequivocal: "Since the Korean tax authorities considered all royalties as 100% sourced in Korea, all payments were subjected to withholding taxes." Dunahoo Memorandum of Oct. 16, 2002 ([First] Barnett Aff. Ex. AA, p. 2).

**IV. THE COURT NEED NOT ANALYZE OR APPLY THE <u>HYUNDAI MOTOR CO.</u> CASE TO DECIDE THIS MATTER.**

Wang's exposition of its view of the facts, rationale, and holding of the Korean Supreme Court's opinion in <u>Hyundai Motor Co.</u> is an attempt to distract this Court from the real issue — whether the Korean government levied taxes on the defendants' royalty payments to Wang. In trying to prove that <u>Hyundai Motor Co.</u> applied to payments under the Agreements and that

7

withholding was therefore not required, Wang cannot point to any authority other than its own comparison of the facts of the cases. Moreover, it ignores all the undisputed evidence that withholding was required, Hyundai Motor Co. notwithstanding.

Wang's own expert, Mr. Ahn, provides a description of the Korean case but does <u>not</u> offer the opinion that it applied to payments under the Agreements or that defendants' were not required to withhold. To the contrary, he concedes that Hyundai Motor Co. applies only to the parties to that case. Ahn Report at 8 ([First] Barnett Aff. Ex. DD). As set forth in more detail in Part I of the Defendants' Brief, the undisputed evidence compels the conclusion that the defendants were required to withhold. Defendants' expert's opinion on this crucial point is unequivocal — Mr. Kim states that "Samsung and Hynix were compelled to withhold taxes from the royalty payments made to Wang." Kim Report § V(b). Moreover, in the face of separate inquiries from each of Wang, Samsung, and Goldstar, NTS refused to state that Hyundai Motor Co. applied to the Agreements or that withholding was not required. See generally Defendants' Brief 10-12.

In sum, neither the result of the Competent Authority Proceeding nor Wang's attempt to apply the Hyundai Motor Co. case constitutes evidence of improper withholding on which a trier of fact could reasonably return a verdict or finding in Wang's favor.

[REST OF PAGE INTENTIONALLY LEFT BLANK]

## **CONCLUSION**

For all of the foregoing reasons, Hynix and Samsung ask that the Court grant their motion for summary judgment.

HYNIX SEMICONDUCTOR, INC. and
SAMSUNG ELECTRONICS CO., LTD.,

By their attorneys,

_____
Robert P. Sherman (BBO #458540)
Bruce S. Barnett (BBO#647666)
DLA Piper Rudnick Gray Cary US LLP
One International Place
Boston, MA 02110
617-406-6000

Dated:  February __, 2006