UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GETRONICSWANG CO., LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HYNIX SEMICONDUCTOR, INC., )<br>SAMSUNG ELECTRONICS CO., )<br>LTD. )<br>)<br>Defendants )<br>)<br> ) | CIVIL ACTION NO. 04-12382(RCL) |

## PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, GetronicsWang Co., LLC ("Getronics"), through its attorneys, Sheehan Phinney Bass + Green, P.A., in conjunction with its assented-to motion for leave to file this surreply, submits the following memorandum in opposition to Defendants' motion for summary judgment and in response to Defendants' reply memorandum.

**I.    Defendants' Unequivocal Acknowledgement of Their Prior Debts Restarted the Statute of Limitations.**

Plaintiff's claims are not barred by the statute of limitations because Defendants restarted it by acknowledging their debts to Plaintiff in 2002-2003. The correspondence prior to Defendants' 2002-2003 payment of the NTS refund constituted contemporaneous acknowledgments of the debts owed to Getronics and, under applicable law, restarted the limitations period. Westminster Nat. Bank v. Graustein, 270 Mass. 565 (1930) (The debtor's acknowledgement of a debt restarted the limitations period.); cf. Sutherland v. MacLeod, 311 Mass. 295 (1942) (Partial payment after expiration of the statute of

limitations restarts the limitations period.). Defendants mischaracterize the central messages conveyed by their letters to Getronics prior to making payment in 2002-2003 in an attempt to divert the Court away from the essential question – did Defendants acknowledge that they owed a debt to Getronics in 2002-2003? A closer review of Defendants' correspondence prior to the 2002-2003 payments reveals that they expressly acknowledged that they owed money to Getronics. Defendants' dispute of the amount owed did not alter the salient fact that they unequivocally acknowledged that they owed money to Getronics in 2002-2003. As such, the limitations period should be calculated from 2002, at the earliest, and Plaintiff's claims were timely filed.

Defendants would have the Court believe that, under their interpretation of the law and the facts, once they withheld in 1992-1993, and six years passed, Plaintiff was powerless to do anything about contesting the amounts repaid to it by Defendants in 2002-2003 because of the statute of limitations. While the effect of a statute of limitations can sometimes be harsh, Defendants are hard-pressed to justify its draconian position in this case.

    A. <u>Defendants' Correspondence</u>.

Defendants' attempt to complicate the analysis by obfuscating their correspondence prior to making the 2003 payments to Getronics does not change the analysis. Defendants' letters to Getronics around the time of the refund <u>do</u> <u>not</u> say, "We [Defendants] do not owe you [Getronics] any money." Nor do Defendants' letters indicate an unwillingness to pay such as, "We [Defendants] owe you money, but we're not going to pay." Either of these responses would not have restarted the limitations

period because they expressly negate the existence of the debt or expressly deny a willingness to pay.

In contrast, Defendants' letters convey a willingness to pay at least a portion of the antecedent debt. Defendants' letters convey the following, "We [Defendants] owe you money and will pay you, but not as much money as you claim you are owed." For example, on December 31, 2002, Samsung informed Getronics that Samsung would remit the monies collected from the NTS, but apply the contemporaneous currency rate. See Exhibit B to Second Barnett Affidavit. On December 30, 2002, Hynix informed Getronics that it would remit payment, but that the amount Getronics would receive would be less than the amount requested in Getronics' December 16, 2002 letter. See Exhibit A to Second Barnett Affidavit.[1] At no time did Defendants indicate to Getronics that they refused to recognize their obligations to Getronincs – which is the essential factor for this Court.[2] As the case law set forth below demonstrates, Defendants' warning to Getronics that the amounts to be remitted would be less than those requested by Getronics, because of a dispute over the applicable exchange rate, does not negate their acknowledgements of the existence of the debts. Under the circumstances, the statute of limitations restarted in 2002 when Defendants sent letters to Getronics.

---

[1] The December 16, 2002 letter reads: "[W]e heard that Korean and U.S. competent authorities have reached a mutual agreement that all payments to Wang Laboratories, Inc based on SIMMs License Agreement are sourced in the United States and all of the taxes withheld would be refunded. However, with respect to the actual amount to be refunded, NTS calculated it applying different exchange rates at the time of respective payments. Therefore, the amount you will receive will be lesser than you mentioned in your letter."

[2] Contrast Defendants' correspondence with Bailey v. Crane, 38 Mass. 323 (1838) (Letter admitted the existence of the debt but stated that the Defendant could not pay.).

3

B.  Disputing the Amounts Owed Does Not Negate The Acknowledgement of Prior Debts.

A dispute over the amount of a debt, coupled with an acknowledgement of its legitimacy, does not prevent the statute of limitations from restarting as to the disputed portion.  Case law from Massachusetts and other jurisdictions reflect this reluctance on the part of courts to cut off resolution of disputes over the amounts owed when the obligation concededly exists.

In Lumbermens Mut. Cas. Co. v. YCN Trans. Co., Inc., 46 Mass. App. Ct. 209 (1999), the insurer initially disclaimed its duty to defend YCN in an underlying action.  YCN retained its own counsel and incurred defense costs in the underlying action beginning as early as February 1987.  In July 1993, while the underlying case was still pending, another Massachusetts court decided a case interpreting an identical policy and determined that the insurer had a duty to defend under similar circumstances.  After the analogous decision was released, Lumbermens agreed to pay YCN for its defense costs incurred after July 1993, the date of the analogous decision, but it refused to pay defense costs incurred prior to July 1993.  YCN sued Lumbermens for the defense costs it incurred from February 1987 until July 1993, before the analogous case was decided.  Lumbermens asserted the statute of limitations as a defense.  The appellate court rejected the defense, because Lumbermen's payment of defense costs incurred after July 1993 constituted an acknowledgment of the debt from February 1987 until July 1993 and restarted the statute of limitations.

Other courts have held that the statute of limitations is tolled by expressions from a defendant acknowledging the existence of a debt, even though the defendant contests the amount owed.  For example, in Sullivan v. Black, Sivalls & Bryson, Inc., 41 S.W.2d

4

255 (Tex. Civ. App. 1931), the plaintiff sent the defendant a demand for $5,231.95 on a time-barred claim. The defendant responded in part, "I have been indebted to your firm for some time—the exact amount of the account I can't remember at this time, but it does not seem to me to be anything like $5,231.95, as per your letter." Id. at 255. Despite the defendant's letter, he did not pay any money to the plaintiff. When the plaintiff sued on the account, the defendant asserted the statute of limitations as a defense. The court held that even though the defendant expressed some uncertainty as to the amount owed, the fact that he expressed a willingness to pay the antecedent debt was sufficient to toll the statute of limitations. Id. at 256.

Similarly, in Parker v. Hoppe, 248 N.Y.S. 454 (N.Y. App. Div. 1931), rev'd on other grounds, 257 N.Y. 333 (1931), the defendant responded to the plaintiff's demand by stating, "I have never considered that the firm of B.B. Hoppe & Company owed you anything except the return of your rubles, which you may receive at any time you wish, and as for sending you funds which neither I nor the Company owe, that is quite out of the question in my present circumstances." Id. at 459. The court found that the defendant's expression of willingness to pay on the stale claim, despite contesting the amount demanded, sufficiently tolled and defeated the statute of limitations defense. Id. ("When we consider the correspondence, therefore, the defense of the statute of limitations in any event must fall.").

In IMFC Financial Corp. v. Salomon, 11 B.R. 874 (Bankr. S.D.N.Y. 1981), several defendants personally guaranteed a debt in 1972. In 1977, the guarantors signed an agreement acknowledging the principal debt but reducing their personal exposures. When the 1972 personal guaranty was challenged in the bankruptcy proceeding, the court

rejected the statute of limitations defense: "A reading of the plain meaning of that provision [of the agreement] can only lead to the conclusion that these guarantors recognized that they had a personal obligation to IMFC and the Participants that was clearly enforceable in 1977. Coupled with the subsequent provision which stated that the guarantors wanted to reduce (not compromise or settle) this obligation, to interpret this document as evidencing anything less than an enforceable obligation reduces the entire agreement to an absurdity." Id. at 878-79. The court, citing to another case for the proposition that offers to compromise a debt after the limitations period are not inconsistent with an intention to pay, held that the statute of limitations defense failed. Id. at 879. Therefore, claims based on the original 1972 personal guarantees were not barred by the statute of limitations.

    C.  <u>The Cases Cited By Defendants Miss The Mark</u>.

The cases cited by Defendants in their Reply Memorandum are inapposite. In <u>Kelly v. McIntyre</u>, 323 Mass. 313 (1948), the decedent paid the plaintiff $13 per week from June 1, 1935 until August 1935. In August 1935, the plaintiff and decedent modified their deal such that the decedent paid the plaintiff $12 per week and provided the plaintiff with board, room, and laundry. The decedent died on June 20, 1945. The plaintiff sued on June 13, 1946, claiming that he was not paid the $12 per week for the entire period from August 1935. The defendant-estate asserted the statute of limitations as defense. If the statute of limitations was not restarted, the claims from August 1935 to June 13, 1940, would be extinguished because they accrued more than six years before the filing of the lawsuit. In response, the plaintiff argued that the weekly payments until the decedent's death restarted the limitations period for all $12 payments from August

6

1935 until the filing of the suit. The court held that the making of regularly scheduled payments until the decedent's death did not qualify as acknowledgements of the debts owed from August 1935 until June 13, 1940. Although the court cut-off the claim to the extent it sought payments from August 1935 until June 13, 1940, the plaintiff's claim for payments from June 14, 1940 until the filing of the complaint were not barred. The weekly payments at issue in Kelly sufficiently differ from Defendants' 2002-2003 payments in this case such that the holding of Kelly is inapplicable.

In DiCarlo v. Lattuca, 60 Mass. App. Ct. 344 (2004), also cited by Defendants, a partner in a partnership died in 1977. The Appeals Court of Massachusetts determined that a cause of action for accounting of partnership assets accrued upon the death of the partner. The plaintiff in DiCarlo did not commence the action for accounting until 1988. The plaintiff argued that the partnership's 1985 distribution of assets to the widow of the deceased partner restarted the statute of limitations. Neither the appellate opinion nor the trial court's opinion, 1998 WL 1182104 (Mass. Super. Ct. Feb. 4, 1998), provides any significant detail of the circumstances of the 1985 payment. However, the appellate court found no evidence that the distribution of partnership assets in any way acknowledged the partner's right to an accounting, but merely disbursed assets. In this case, in contrast, Defendants expressly acknowledged their obligations to Getronics in 2002-2003, restarting the limitations period.

    D.  Defendants' Acknowledgements Restarted The Limitations Period.

The fundamental question necessary for restarting the limitations period upon the acknowledgment of a prior debt is whether Defendants unequivocally and directly admitted that they owed money to Getronics and expressed a willingness to pay. In this

case, the only reasonable construction of the record leads to the conclusion that Defendants unequivocally expressed their acknowledgement of the antecedent debts and unambiguously manifested their intention to pay. The fact that they may have disputed the amounts claimed by Getronics does not obviate their express acknowledgement of their obligation and willingness to pay.[3]  See Barnard v. Bartholomew, 39 Mass. 291 (1839) (An acknowledgement of a debt need not specify the amount owed.). Therefore, Getronics' claims are timely.

## II. Plaintiff's Exchange Rate Claim Is Not Barred By the Statute of Limitations.

Defendants' attempt to extend the application of the statute of limitations to Plaintiff's Exchange Rate Claims also fails because those claims accrued in 2002-2003 at the time of the breach. Upon the conclusion of the competent authority proceeding, Getronics sent to Defendants letters informing them of the competent authority disposition and requesting payment of the full amounts withheld by Defendants when the royalties accrued. See Chart 2 in Plaintiff's Memorandum of Law in Support of Its Motion for Summary Judgment. Instead of paying the amounts due, each Defendant applied the currency rate applicable in 2002-2003 (the time of the refund) and consequently paid Getronics less than the amounts withheld.[4]  See Chart 4 in Plaintiff's Memorandum of Law in Support of Its Motion for Summary Judgment. Getronics' cause of action for the Exchange Rate Claim, the difference between the amounts withheld and the amounts paid in 2003, did not accrue until the refund payments were made using the

---

[3] The best Defendants can hope for under the circumstances is that they have created a sufficient dispute of fact as to the efficacy of their acknowledgement such that a jury will have to decide whether they acknowledged their obligation to Getronics in 2002. They are not entitled to summary judgment, however.

[4] In so doing, Defendants ignored the License Agreements' plain terms requiring application of the currency rate applicable when the royalties accrued.

8

incorrect exchange rate.  See, e.g., Anthony's Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc., 396 Mass. 818 (1986).  Defendants could have paid Getronics in full in 2003, in which case Getronics would not have suffered damages from the Exchange Rate Claim.  Quite simply, Getronics could not have known that it had been damaged or the extent of the damages until 2003 when the incorrect exchange rates were used.  Plaintiff's suit on the Exchange Rate Claim is, therefore, timely.

Not only does Defendants' argument fail under the law, but it also fails logically, because Defendants' two-pronged statute of limitations attack rests on dubious assumptions.  First, Defendants claim that, if they breached by withholding, Plaintiff's claim is now barred by the statute of limitations.  Defendants simultaneously argue that if they performed the contract by withholding, then the contracts are silent on the exchange rate to be applied to "refunds," and fairness dictates that the 2002 rate be applied.  Each of Defendants' arguments fails to hold water.

The problem with the first theory is that it assumes that the License Agreements can only be breached once.  However, even if the Defendants breached by withholding, there is no reason why they could not have breached the License Agreements a second time when the funds were returned to them and they failed to return the funds to Getronics at the contractually required exchange rate.  With respect to the Exchange Rate Claim, the statute of limitations began to run upon Defendants' breach in 2002-2003.

Defendants' second alternative argument fares no better under analysis. The monies withheld were not transmogrified into a "refund" with different legal rights and characteristics simply because it passed through the hands of the NTS; the money was owed, upon receipt from the NTS by the Defendants, because it was Plaintiff's royalty

9

income. The monies were therefore subject to the royalty payment provisions of the License Agreements and the express exchange rate and the License Agreements were breached when payment at the incorrect exchange rate was made.

### III. The Competent Authority Determination Establishes That Defendants Breached Their License Agreements.

Plaintiff has sufficiently demonstrated in prior pleadings that Defendants breached the plain terms of the License Agreements by failing to pay royalties as they accrued. Their excuse for non-payment, to the extent it relies upon Korean substantive law, constitutes an affirmative defense for which Defendants must carry the burden. Regardless of the burden of proof, the only reasonable construction of the record leads to the conclusion that Defendants' withholding was improper. The competent authority proceeding determined that fact conclusively. See October 16, 2002 letter from IRS to Wang, Exhibit 10 to Affidavit of James Harris in Support of Plaintiff's Motion for Summary Judgment ("The NTS has agreed that none of the royalties will be considered as Korean sourced. Accordingly, the NTS will refund all of the withholding to the Korean withholding agents."). Even if Defendants did not actively participate in the competent authority proceeding, they now espouse the same argument advanced by the Korean NTS in that forum – that taxes were properly withheld from the royalty payments. Defendants latch on to the NTS' argument now in an attempt to justify their breaches of the License Agreements. The fact that the competent authorities, including the Korean NTS, determined that the royalties were not Korean sourced income establishes that Defendants improperly withheld taxes from the royalty payments and defeats the defense asserted.

Defendants attempt to re-characterize their 2003 payments as "tax refunds" in an effort to avoid the License Agreements' express currency calculation. In actuality, Defendants' 2003 payments to Getronics were late royalty payments, the amounts withheld from the royalties that accrued years earlier.

Defendants also take issue with IRS Agent Paul Martineau's November 26, 2002 letter to Getronics after the conclusion of the competent authority proceeding. See Exhibit 3 to the Affidavit of James Harris in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment. Martineau states that Wang had "won its [sic] claim that the withholding tax should not have been withheld and given over to the Korean government." Id. Martineau admittedly did not participate in the competent authority proceeding, but he was responsible for effectuating the disposition in the United States. Carol Dunahoo, who did participate in the competent authority proceeding, stated in her October 16, 2002 letter that the royalties were not Korean sourced income. See Exhibit Z to Barnett Aff. The primary importance of Paul Martineau's letter is that it undercuts Defendants' characterization of the competent authority proceeding as toothless. Indeed, the result of the competent authority could not be ignored by Plaintiff and Defendants. It was not, as Defendants suggest, a hypothetical negotiation between politicians from two countries.

## Conclusion

For the reasons stated above, Defendants have not met their burden to warrant judgment as a matter of law. Plaintiff's motion for summary judgment should be granted, Defendants' motion for summary judgment should be denied, and judgment in favor of Getronics should be entered.

Respectfully submitted,

GETRONICSWANG CO., LLC

By its attorneys,

SHEEHAN PHINNEY BASS + GREEN, PA

Date: March 6, 2006                    /s/ Michael C. Harvell
                                                            Michael C. Harvell (Pro Hac Vice)
                                                            One Boston Place, 38th Floor
                                                            Boston, MA 02108
                                                            (617) 897-5600

Date: March 6, 2006                     /s/ Maria Recalde
                                                            Maria Recalde, (BBO# 552831)
                                                            One Boston Place, 38th Floor
                                                            Boston, MA 02108
                                                            (617) 897-5600

## **CERTIFICATE OF SERVICE**

    I, Maria E. Recalde, hereby certify that the foregoing Surreply In Support of Plaintiff's Motion for Summary Judgment was served on Robert P. Sherman, Esq. and Bruce S. Barnett, Esq., DLA Piper Rudnick Gray Cary LLP, One International Place, Boston, Massachusetts 02110, robert.sherman@dlapiper.com and bruce.barnett@dlapiper.com through Electronic Case Filing, this 6th day of March, 2006.

                                                                                            /s/ Maria E. Recalde
                                                                                            Maria E. Recalde